795 A.2d 308 (2002)
350 N.J. Super. 353
STATE of New Jersey, Plaintiff-Respondent,
v.
David SUMMERS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 2002.
Decided April 24, 2002.
*311 Peter A. Garcia, Acting Public Defender, attorney for appellant (Jodi Ferguson, Assistant Deputy Public Defender, of counsel and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent (Casey N. MacDonald, Assistant County Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, KESTIN, and STEINBERG. *309
*310 The opinion of the court was delivered by STEINBERG, J.A.D.
An Atlantic County grand jury returned Indictment No. 99-5-850 charging defendant David Summers as follows: thirddegree unlawful possession of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of a controlled dangerous substance, cocaine, with the intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(3) (count two); third-degree distribution of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35(5)(a)(1), (b)(3) (count three); second-degree possession of a controlled dangerous substance, cocaine, with the intent to distribute within 500 feet of a public housing facility, public park, or public building, N.J.S.A. 2C:35-7.1 (count four); second-degree distribution of a controlled dangerous substance, cocaine, within 500 feet of a public housing facility, public park, or public building, N.J.S.A. 2C:35-7.1 (count five); and fourth-degree use of a remotely activated paging device while engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit an offense enumerated in Chapter 35 of Title 2C, N.J.S.A. 2C:33-20 (count six).
A jury found defendant guilty of the charges set forth in counts one through five, and not guilty of the fourth-degree offense of possession of a paging device. After denying the State's application to sentence defendant to a discretionary extended *312 term, the judge merged counts one through four into count five and imposed a sentence of nine years of incarceration. The appropriate monetary penalties, fees, and assessments were also imposed. In addition, the judge suspended defendant's driver's license for a period of six months. Defendant appeals. We affirm.
According to the State's proofs, on April 20, 1999, Atlantic City Detective Sam Dickson was part of an undercover surveillance operation on Texas Avenue, near the boardwalk. He was parked on the street, sitting in an unmarked police vehicle, when he observed a man walking on Texas Avenue toward him. The man stopped, and two other men approached him. Although the men were 100 to 150 feet away from the officer, Dickson used binoculars to "bring them closer." He observed defendant engage in a conversation with a person subsequently identified as Peter Dyer.[1] Dickson could not tell if the third individual was involved in the conversation.
After this brief conversation, the three men crossed Texas Avenue and stopped in front of a boarded up home at 127 South Texas Avenue. The home appeared to be abandoned. Defendant and the unidentified man walked toward the home while Dyer waited on the sidewalk and faced the home. Dickson then observed defendant and Dyer face each other. Defendant appeared "to have something in the palm of his hand." As defendant "extended" his hand, Dyer looked into defendant's palm. According to Dickson, defendant handed "objects" to Dyer, who, in turn, gave something to defendant. Although Dickson conceded he "only got a very quick glimpse" of the object Dyer gave defendant, he believed it to be paper currency.
Dyer then left, crossing back over to the west side of Texas Avenue holding the objects he had just received from defendant in his right hand. As Dickson continued to watch Dyer, he noticed that from "time to time, Dyer would look down into the palm of his hand." Dyer did not drop anything onto the ground, pick up anything, or stop to talk with anyone as he walked. Believing he had just observed a drug transaction, Dickson radioed back-up officers and gave them a description of the three men as well as their location. Dickson said he would intercept Dyer and asked the back-up officers to stop defendant, as well as the other person. Dyer walked "directly up to [Dickson's] vehicle." Dickson got out of his car, and as he was about to identify himself as a police officer, Dyer looked directly at him and put his right hand up to his mouth. According to Dickson, Dyer put something into his mouth. Dickson identified himself as a police officer and ordered Dyer to open his mouth. Dickson observed several bags on Dyer's tongue and ordered him to spit them out. Dyer spit two bags out. Dickson ordered him to open his mouth again because he saw more than two bags. Dyer complied. Dickson saw two more bags on Dyer's tongue, and ordered him to spit them out as well. Again, Dyer complied.
In response to Dickson's request for back-up, Detective Joseph Falcone and other members of the narcotics unit proceeded to the area. Falcone stopped defendant in front of 127 South Texas Avenue. After he identified himself as a police officer, Falcone conducted a patdown search of defendant. During the course of the pat-down, Falcone found a cigarette box inside defendant's left jacket pocket. The cigarette box contained *313 a plastic bag with a picture of an apple and the numbers 1212 written on the front. Within that bag were fifty small, plastic bags which contained a "white rocky substance." The substance in the bags was later determined to be cocaine, which was packaged in $10 bags with an estimated street value of $500. Falcone also seized $262.20 from defendant. Falcone compared the bags he had seized from defendant with the bags Dickson had recovered and noted they were identical.
On this appeal defendant raises the following arguments:
POINT I
THE ADMISSION OF EXPERT TESTIMONY ON DRUG TRAFFICKING THAT INCLUDED THE OPINION THAT DEFENDANT HAD ENGAGED IN DISTRIBUTION IMPERMISSIBLY INVADED THE PROVINCE OF THE JURY, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (NOT RAISED BELOW).
POINT II
THE PROSECUTOR'S REMARKS IN SUMMATION, WHICH VOUCHED FOR THE CREDIBILITY OF THE STATE'S WITNESSES, WERE PLAIN ERROR WARRANTING REVERSAL. (NOT RAISED BELOW).
POINT III
THE DEFENDANT'S SENTENCE IS EXCESSIVE.
We first consider defendant's contention that the expert testimony on drug distribution offered by Detective Donna Price invaded the province of the jury necessitating a reversal of his convictions. We reject that contention.
Without objection, the State offered the testimony of Detective Donna Price as an expert on drug distribution. She was asked the following hypothetical question:
Atlantic City police are conducting a surveillance in the area of the beach block of Texas Avenue. It's approximately 8:45 at night in April of 1999. During the course of their surveillance they see three males. There is one male walking, and then he is approached by two other males. There is a brief conversation between the first male and one of the [other] males, very brief, approximately twenty seconds. After that the males leave one side of the street and go to an abandoned house up on a cement pad. At that point the third male separates himself, and the first male and the second male appear to be in a conversation.
At one point this second male has an object in his hand which he shows to the first male. We'll call him S-1. And S-1 looks at what S-2 has in his hand. At that point, S-2 hands S-1 the objects, and S-1 hands S-2 the money. At that point the two separate. S-1 is later stopped by the police, and while he's being stopped he puts what he got into his mouth. He is told to spit it out, which he does. The police recover four small zip-loc baggies containing cocaine.
The other male, S-2, is then stopped a short distance away, and recovered from him in a cigarette box containing 50 small zip-loc baggies. He has $262 on him, as well as an activated pager. The baggies found on the second male are identical to the baggies found on the buyer.
The second male that was with S-2 is at a distance apart from him and has no drugs on him. The cigarette box is recovered from S-2's person. The other person was not charged; he was released. *314 This happened on the beach block of Texas Avenue in Atlantic City.
Do you have an opinion as to whether S-2 in this hypothetical was engaged possessed those drugs for his own use or for distribution? A. For distribution.
When asked how she arrived at that conclusion, Price replied that she relied upon all of the facts given her in the hypothetical question. She also opined that the fact that defendant had no drug paraphernalia was significant because buyers usually have some type of instrument to inject or ingest the drug that they are buying. When asked if there was any significance to the amount of money confiscated from "the second male," she said, "[T]hat's telling me he was distributing drugs." In addition, when asked if the fact that a larger zip-loc bag having "a little red apple on it," which contained the smaller baggies, altered her opinion as to whether the drugs were possessed for personal use or distribution, she responded, "I would say for distribution." Again, when asked if there was any significance to "the fact that the baggies found on the buyer match[ed] the baggies found on the seller," she responded, "[T]hat would tell me that S-2 was distributing them, if they are the same type of packaging." In addition, when asked the significance of the drugs being found in a cigarette box, the area involved, the fact that the person had fifty small bags, and that the exchange was quick, all led her to conclude "that the person was distributing."
Defendant contends that the expert testimony unfairly infringed on the jury's fact-finding role as it expressed the opinion that he had engaged in drug sales. Thus, he claims he was denied a fair trial. At trial, defendant did not object either to the form or content of the hypothetical question, or the opinions expressed by the expert. Thus, we review defendant's contention in the context of R. 2:10-2, the plain error rule. In order to prevail, defendant must convince us that there was an error clearly capable of producing an unjust result. R. 2:10-2. Whether an error is reason for reversal ultimately depends upon some degree of possibility that the claimed error led to an unjust verdict. State v. Macon, 57 N.J. 325, 335, 273 A.2d 1 (1971).
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified an as expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702. There are three basic requirements for the admission of expert testimony:
"(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."
[State v. Berry, 140 N.J. 280, 290, 658 A.2d 702 (1995) (quoting State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984)).]
As such, "expert opinion is admissible if the general subject matter at issue, or its specific application, is one with which an average juror might not be sufficiently familiar, or if the trial court determines that the expert testimony would `assist the jury in comprehending the evidence'" and ascertaining the factual issues. Id. at 292-93, 658 A.2d 702 (quoting State v. Odom, 116 N.J. 65, 70, 560 A.2d 1198 (1989)). Both the necessity for and the admissibility of expert testimony *315 are committed to the sound exercise of discretion by the trial judge. Id. at 293, 658 A.2d 702. In determining whether to admit expert testimony the trial court must focus "not only on the jury's comprehension of the subject matter but also on whether the specific proffered testimony will aid the jury in resolving factual issues." Id. at 291, 658 A.2d 702.
If lay or expert opinion testimony is otherwise competent and admissible, the fact that it may embrace the ultimate fact issue in dispute does not render it inadmissible. N.J.R.E. 704; Jacober by Jacober v. St. Peter's Med. Ctr., 128 N.J. 475, 497, 608 A.2d 304 (1992). It is well-settled that in a prosecution for possession of controlled dangerous substances with the intent to distribute, a defendant's intent or purpose in connection with his or her possession of unlawful drugs is an appropriate subject of expert testimony. Odom, supra, 116 N.J. at 79, 560 A.2d 1198; State v. Sharpless, 314 N.J.Super. 440, 455-57, 715 A.2d 333 (App.Div.), certif. denied, 157 N.J. 542, 724 A.2d 802 (1998); State v. Montesano, 298 N.J.Super. 597, 618-19, 689 A.2d 1373 (App.Div.), certif. denied, 150 N.J. 27, 695 A.2d 670 (1997).
In addition, ordinarily, expert testimony regarding the modus operandi of drug dealers is admitted provided the trial court is satisfied that the testimony will assist the jury in resolving material factual issues. Berry, supra, 140 N.J. at 301, 658 A.2d 702.
[A]s long as the expert does not express his [or her] opinion of defendant's guilt but simply characterizes the defendant's conduct based on the facts in evidence in light of his [or her] specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide.
[Odom, supra, 116 N.J. at 79, 560 A.2d 1198.]
Likewise, the expert opinion is admissible even though "it is expressed in terms that parallel the language of the statutory offense when that language also constitutes the ordinary parlance or expression of persons in everyday life." Ibid. However, because the determination of guilt or innocence in a criminal case is the exclusive responsibility of the jury, in considering whether to allow an expert to give an opinion on the ultimate issue to be decided by the jury, the judge must always be aware of N.J.R.E. 403.
Thus, in his or her gatekeeping function, the judge must consider whether, in the circumstances presented, the probative value of the expert testimony is substantially out weighed by the risk of undue prejudice. Berry, supra, 140 N.J. at 301, 658 A.2d 702. In Berry, the Court noted that the "risk can be significant if the expert witness is one of the investigating officers and also offers an opinion on an ultimate issue on the case." Ibid. Here, we note that Detective Price, the expert, was not one of the investigating officers although she did play an inconsequential role in transporting the drugs to and from the laboratory.
An expert may not express a direct opinion that defendant is guilty of the crime charged. Odom, supra, 116 N.J. at 77, 560 A.2d 1198. However, while the expert cannot express an opinion that defendant is guilty, the expert may testify that the controlled dangerous substance seized was possessed with the intent to distribute. Id. at 77-79, 560 A.2d 1198. "[A]n expert opinion that the drugs were held for distribution, even though expressed in words that are similar to the statutory definition of the offense, does not rise to the level of an assertion that the defendant committed the crime charged or *316 is guilty of the statutory offense." Id. at 81,560 A.2d 1198.
The opinion should be elicited through a hypothetical question that is carefully phrased to refer only to the testimony in evidence introduced during the trial regarding
"the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and manner in which the drugs may be secreted or otherwise possessed for personal use or distribution."
[Id. at 81-82, 560 A.2d 1198 (citation omitted).]
In the hypothetical question, "the expert may be asked if, based on [the] assumed facts, he or she has an opinion whether the drugs were possessed for personal use or for the purpose of distribution." Id. at 82, 560 A.2d 1198. Lest the opinion be considered a net opinion, the expert must provide the basis for the opinion. Ibid. Where, as here, the expert provides the basis for the opinion, there is no danger that the jury might consider that the expert based his or her opinion on facts not in evidence of which the expert may be aware. The jury must understand that the opinion cannot be based on facts not in evidence. Ibid. The defendant's name must not be used. Ibid. Moreover, the judge must instruct the jury that it is not bound by the expert's opinion but, rather, it is free to either accept or reject the opinion. Berry, supra, 140 N.J. at 301, 658 A.2d 702.
Here, we have little doubt that the expert opinion was of assistance to the jury in determining whether it was satisfied beyond a reasonable doubt that the drugs were possessed with the intent to distribute, rather than for personal use. The hypothetical question posed of the expert was based upon the facts in evidence. In addition, Detective Price explained the reasons for her opinion which were based upon facts in evidence. For example, she explained the facts that led her to conclude that the drugs were possessed by defendant for purposes of distribution. These facts included: the passing of an object and the currency, followed immediately by the parties separating; the short duration of the encounter; the packaging of the drugs in more than fifty small bags; the bags in Dyer's possession were similar to the bags in defendant's possession; the storage of the bags in a cigarette box for concealment purposes; the location of the exchange in an area highly known for narcotic activity; defendant's possession of an activated pager; and the lack of any drug paraphernalia found on defendant. She said buyers usually "have some type of instrument to inject or ingest the drug that they are buying." Thus, it is clear that the witness was relying upon facts in evidence, rather than facts of which she was aware, and the jury was unaware.
Moreover, in the course of his charge, the judge instructed the jury as follows:
There is a general rule of evidence that a witness can testify only as to facts known by them, and ordinarily a witness would not be permitted to give an opinion. There is an exception in the case of an expert witness. An expert witness can give an opinion in a matter in which that expert is versed and which is material to the case.
So, in legal terminology, an expert witness is someone who has some special knowledge, skill, experience, or training that isn't possessed by the ordinary juror and who, thus, may be able to provide *317 assistance to the jury in its fact finding duties.
In this case you heard from Detective Donna Price both in a capacity as evidence custodian and, as well, as an expert witness. You're not bound by her opinion, but you should consider each opinion and give it the weight to which you deem it's entitled, whether that weight be great or slight, or you may reject it. And in examining any opinion consider the reasons given for it, if any, and also consider the qualifications and the credibility of the expert. It's always within the special function of you, the jury, to decide whether the facts on which the opinion of an expert is based actually exists. The value or weight of the opinion of the expert is dependent upon and no stronger than the underlying facts on which that opinion is based.
Thus, the judge clearly and unequivocally advised the jury that it was not bound by the expert's opinion, and was free to reject it. The judge also instructed the jury that it was within its sole and exclusive province to decide whether the facts upon which the opinion was based actually existed, and the value or weight of the opinion was not only dependent upon, but was no stronger than the underlying facts upon which it was based. As such, "the jury was informed that it was the ultimate finder of fact and that it must determine the appropriate weight to give" the expert testimony. Montesano, supra, 298 N.J.Super. at 620, 689 A.2d 1373.
Our conclusion that the judge did not err in allowing the expert opinion in this case is not inconsistent with State v. Singleton, 326 N.J.Super. 351, 741 A.2d 168 (App.Div.1999) or State v. Baskerville, 324 N.J.Super. 245, 735 A.2d 39 (App.Div. 1999), certif. denied, 163 N.J. 10, 746 A.2d 456 (2000). In those cases, we held that although expert testimony may be admissible as bearing upon an intent to distribute in order to assist the jury in understanding the evidence where an offense with that element is charged, once the expert offers an opinion that a drug transaction had, in fact, taken place, he or she "crosses the line of permissibility." Singleton, supra, 326 N.J.Super. at 354, 741 A.2d 168; accord Baskerville, supra, 324 N.J.Super. at 257, 735 A.2d 39. We concluded that although the expert may describe, for example, methods used by those involved in drug distribution in order for the jury to understand the evidence presented and its significance, the ultimate question of whether drug distribution had taken place is not beyond the ken of the ordinary juror and is thus inadmissible. Baskerville, supra, 324 N.J.Super. at 256-58, 735 A.2d 39. Here, the expert's opinion was not offered to establish that defendant had distributed controlled dangerous substances. On the contrary, the thrust of her opinion was that the drugs seized from defendant were possessed with the intent to distribute, rather than for personal use. Thus, we conclude that there was no error, let alone plain error, in allowing Price to offer an opinion.
Moreover, even if there was error, it did not result in the denial of a fair trial. See Macon, supra, 57 N.J. at 338, 273 A.2d 1. Because defendant did not object either to the form or the content of the hypothetical question, he waived whatever objection he may have had. Sharpless, supra, 314 N.J.Super. at 456, 715 A.2d 333. The evidence of defendant's guilt was overwhelming. In addition, the thrust of the defense was that the drugs were seized on the ground and did not belong to defendant. Defendant did not, on summation, challenge the State's contention that the drugs seized were possessed for the purpose of distribution.
*318 Finally, we have carefully considered the record, the briefs filed, and the applicable law and conclude that all other issues raised by defendant on this appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed.
KESTIN, J.A.D., dissenting.
Except for one particular, I dissent.
The majority elevates form over substance when it concludes that the State's expert did not offer an opinion on the ultimate issue in the case because the hypothetical she was called upon to answer substituted contrived designations for the names of the participants while incorporating every significant factual detail of the transactions at issue. That conclusion is a misapplication of the underlying policies of State v. Odom, 116 N.J. 65, 560 A.2d 1198 (1989), and a misreading of State v. Baskerville, 324 N.J.Super. 245, 735 A.2d 39 (App.Div.1999), certif. denied, 163 N.J. 10, 746 A.2d 456 (2000). See also State v. Singleton, 326 N.J.Super. 351, 741 A.2d 168 (App.Div.1999). In the circumstances, given the qualities and detail of the hypothetical question in the light of the charges the jury was called upon to consider, it couldn't be clearer that this expert opined that a drug transaction had occurred, thereby "cross[ing] the line of permissibility and contaminat[ing] all related proofs with prejudicial qualities not easily cured." Id. at 354, 741 A.2d 168 (citing Baskerville, supra, 324 N.J.Super. at 263-64, 735 A.2d 39, and State v. J.Q., 130 N.J. 554, 574-81, 617 A.2d 1196 (1993)).
The ends of justice are perverted for the sake of convenience when the State is permitted so easily, by the use of a device tantamount to a fiction, to evade the ultimate-question bar of Odom, supra, 116 N.J. at 77, 560 A.2d 1198. Such a result holds our legal system up to disrepute, and it subjects to ridicule this jurisdiction's devotion to applying fundamental fairness rules in sensible and realistic ways.
Despite the majority's attempts to distinguish this case from Baskerville and Singleton, there are no principled differences between those cases and this one, and there is no cogent way to reconcile a disparate result. I continue to adhere to the reasoning in Baskerville and Singleton.
For the reasons expressed in Singleton, supra, 326 N.J.Super. at 354, 741 A.2d 168, however, I concur in affirming defendant's conviction on count one for simple possession of a controlled dangerous substance. From the majority's holding bearing upon the other convictions, I dissent.
NOTES
[1] Dyer was charged in count one of the indictment with possession of a controlled dangerous substance.