823 A.2d 15

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DAVID SUMMERS, DEFENDANT–APPELLANT.

Argued February 19, 2003—Decided May 28, 2003.

307

*Jodi L. Ferguson,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Casey N. MacDonald,* Assistant Prosecutor, argued the cause for respondent (*Jeffrey S. Blitz,* Atlantic County Prosecutor, attorney).

*Hillary K. Horton,* Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

A jury convicted defendant of multiple drug charges, including possession and distribution of a controlled dangerous substance (CDS). The question before us is whether the State's expert witness intruded on the jury's fact-finding role by expressing what defendant argues was an impermissible opinion on guilt. Specifically, the expert expressed the view that facts presented in a hypothetical (modeled on identical facts adduced at trial) were indicative of drug distribution. In *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), this Court articulated a standard for evaluating an expert's testimony when such a question is presented. The Appellate Division upheld defendant's conviction, finding no violation of *Odom.* We agree and affirm.

I.

We derive our summary of the essential facts largely from testimony and other evidence adduced at trial. On the evening of April 20, 1999, an Atlantic City narcotics detective, Sam Dickson, conducted a surveillance operation of a known drug area on Texas

Avenue near the boardwalk. Facing north in an unmarked police vehicle, Detective Dickson used a pair of binoculars to view the street. At about 8:45 p.m. the detective observed a man, later identified as defendant David Summers, walking southbound toward the officer. Several cars were parked on the street's east side, the side on which the detective's vehicle was parked.

Using his binoculars, Detective Dickson observed defendant stop briefly. Two men greeted defendant. The detective saw one of the men, later identified as co-defendant Peter Dyer, engage defendant in a conversation that lasted only a few seconds (from his vantage point the detective could not determine whether the third man participated in the conversation). Thereafter, the three men crossed over to the street's east side and stood before an abandoned home. Defendant and Dyer then walked to the home's porch area, which Detective Dickson described as "a concrete pad." The detective observed defendant holding out his palm with an object in it. He further observed Dyer proffer to defendant what appeared to be folded currency. The detective was approximately 100 to 150 feet away from the parties when he viewed that exchange.

After receiving certain objects from defendant, Dyer returned to the street's west side with the objects in his right hand. Believing that he had witnessed a drug transaction, Detective Dickson radioed for backup officers and directed them to apprehend defendant and the third man, leaving the detective to apprehend Dyer. The detective exited his car as Dyer approached. Before the detective could identify himself as a police officer, Dyer placed the objects in his mouth. The detective ordered Dyer to open his mouth and spit them out. Dyer complied and spat out four baggies of a white-rocky substance. By then, the other officers had arrived and apprehended defendant and the third man.

Based on a conversation with Dyer, Detective Dickson asked one of the backup officers, Joseph Falcone, whether he (the officer) had recovered a cigarette pack from defendant. Detective

Falcone confirmed that he had retrieved the cigarette pack and that when he had opened it, he found the following items: a medium-size bag with the number 1212 and an apple imprinted on it, and 50 smaller plastic bags of identical size and shape with a white rocky substance in them.

Detective Falcone also testified that he had recovered from defendant nine $20 bills, five $10 bills, four $5 bills, six $1 bills, in addition to numerous coins, for a total of $262. The detective also retrieved an activated pager found on defendant. Because the police found no drugs on the third man, they released him at the scene. The white rocky substance found in the baggies later tested positive for cocaine.

A grand jury charged defendant with multiple drug offenses, including possession of CDS in violation of *N.J.S.A.* 2C:35–10a(1); possession with intent to distribute a CDS in violation of *N.J.S.A.* 2C:35–5a(1) and –5b(3); distribution of a CDS in violation of *N.J.S.A.* 2C:35–5a and –5b(3); possession of a CDS with intent to distribute, and distribution of a CDS, within 500 feet of a public housing facility, public park, or public building in violation of *N.J.S.A.* 2C:35–7.1; and possession of a paging device while in the commission of a crime in violation of *N.J.S.A.* 2C:33–20. The grand jury also charged Dyer with possession of CDS in violation of *N.J.S.A.* 2C:35–10a(1).

The State tried defendant separately from Dyer. Detective Donna Price, who had not participated in the surveillance or arrest of defendant, testified at his trial as an expert in narcotics. On direct examination, the assistant prosecutor posed the following hypothetical to Detective Price:

Atlantic City police are conducting a surveillance in the area of the beach block of Texas Avenue. It's approximately 8:45 at night in April of 1999. During the course of their surveillance they see three males. There is one male walking, and then he is approached by two other males. There is a brief conversation between the first male and one of the [other] males, very brief, approximately twenty seconds. After that the males leave one side of the street and go to an abandoned house up on a cement pad. At that point the third male separates himself, and the first male and the second male appear to be in conversation.

At one point the second male has an object in his hand which he shows to the first male. We'll call him S-1. And S-1 looks at what S-2 has in his hand. At that point S-2 hands S-1 the objects, and S-1 hands S-2 money. At that point the two separate. S-1 is later stopped by the police, and while he's being stopped he puts what he got in his mouth. He is told to spit it out, which he does. The police recover four small zip-loc baggies containing cocaine.

The other male, S-2, is then stopped a short distance away, and recovered from him is a cigarette box containing 50 small zip-loc baggies. He has $262 on him, as well as an activated pager. The baggies found on the second male are identical to the baggies found on the buyer.

The second male that was with S-2 is at a distance apart from him and has no drugs on him. The cigarette box is recovered from S-2's person. The other person was not charged; he was released. This happened on the beach block of Texas Avenue in Atlantic City.

Do you have an opinion as to whether S-2 in this hypothetical ... possessed those drugs for his own use or for distribution?

In response, Detective Price expressed her view that S-2 in the hypothetical possessed the drugs for distribution and not for personal use. She based that opinion on the fact that no paraphernalia was found on S-2, that S-2 had $262 in various paper currencies and coins, and that S-2 had a large bag with smaller bags containing cocaine. Notably, defendant did not object either to the form of the question or to the expert's response.

The jury found defendant guilty of all the charges, except the charge pertaining to possession of a paging device. The trial court imposed a nine-year jail sentence. On appeal, defendant argued that the hypothetical posed to Detective Price and the detective's response to it had denied the jury a chance to determine whether defendant possessed CDS with intent to distribute. With one judge dissenting, the Appellate Division rejected that argument and affirmed defendant's conviction and sentence in a reported opinion. *State v. Summers,* 350 *N.J.Super.* 353, 795 *A.2d* 308 (2002). Citing *Odom,* the panel's majority observed that Detective Price's testimony had helped the jury understand whether defendant possessed the CDS with intent to distribute, and that the testimony did not infringe on defendant's right to have a jury decide his guilt. Defendant appealed to this Court as of right. *R.* 2:21(a)(2).

## II.

The legal principles governing this dispute are well settled and straightforward. Generally,

the opinion of an expert can be admitted in evidence if it relates to a relevant subject that is beyond the understanding of the average person of ordinary experience, education, and knowledge. If the expert's testimony on such a subject would help the jury understand the evidence presented and determine the facts, it may be used as evidence. The witness offered as an expert must, of course, be suitably qualified and possessed of sufficient specialized knowledge to be able to express such an opinion and to explain the basis of that opinion. *State v. Kelly*, 97 *N.J.* 178, 208, 478 *A.*2d 364 (1984). Once it is determined that this testimony will genuinely aid the jury, it can be admitted. *Id.* at 208 n. 14, 478 *A.*2d 364. Our Rules of Evidence codify these principles.

[*Odom, supra*, 116 *N.J.* at 71, 560 *A.*2d 1198.]

Whether expert testimony is admissible rests in the trial court's sound discretion. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *N.J.R.E.* 704. Such testimony, however, still is subject to exclusion if the risk of undue prejudice substantially outweighs its probative value. *State v. Berry*, 140 *N.J.* 280, 298, 658 *A.*2d 702 (1995).

Courts widely agree that expert testimony about drug-trade practices is admissible, although case law varies in terms of the permissible extent and nature of such testimony. See *id.* at 293–95, 658 *A.*2d 702 (surveying State and federal cases concerning testimony about *modus operandi* of drug dealers). The underlying rationale in allowing expert testimony is that jurors normally require "the insight of an expert to explain the significance of the properties, packaging, and value of illegal drugs." *Odom, supra*, 116 *N.J.* at 76, 560 *A.*2d 1198; *see also State v. Perez*, 218 *N.J.Super.* 478, 485, 528 *A.*2d 56 (App.Div.1987) (observing that "it is unreasonable to assume that the average lay person called to serve as a juror would necessarily know what a person who possesses [a certain quantity of drug] was going to do with it").

As noted, the seminal case in New Jersey in this area of the law is *Odom, supra*, in which the jury convicted the defendant of

possessing CDS with the intent to distribute. 116 *N.J.* at 67–68, . 560 *A.*2d 1198. At trial, the State's expert testified about the nature of the drugs involved and their packaging. *Id.* at 69, 560 *A.*2d 1198. The prosecutor asked the expert to assume a set of facts consistent with those adduced at trial, namely, "that a search warrant was executed, that eighteen vials of crack [cocaine] were found in a pillowcase in a bed in which [the] defendant was found sleeping, that $24.00 was found in the apartment and that no other drug paraphernalia was found." *Ibid.* Based on those facts, the State asked the expert to express a view on "'whether [the defendant] possessed 18 vials of crack for his own use or possessed them with the intent to distribute them.'" *Ibid.*

Defense counsel objected on the grounds that the expert was not qualified to testify in respect of the defendant's state of mind. *Ibid.* The trial court overruled that objection, permitting the State again to ask, "'Do you have an opinion whether those 18 vials of crack were possessed for personal use or for the purpose of distributing them?'" *Ibid.* The expert responded "that it was his opinion that the drugs were possessed with an intent to distribute them." *Ibid.* The witness then explained the basis for that opinion, including the common procedures for distributing crack cocaine, the drug's estimated street value, crack cocaine's addictive qualities, and the absence of drug paraphernalia as being consistent with distribution. *Ibid.*

The jury found the defendant guilty of possession with intent to distribute CDS. *Id.* at 67–68, 560 *A.*2d 1198. The Appellate Division reversed. *State v. Odom,* 225 *N.J.Super.* 564, 543 *A.*2d 88 (1988), *rev'd,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989). A majority of the panel concluded that the expert's opinion was not helpful to the jury and unduly prejudicial to the defendant. *Ibid.* The court further concluded that the expert's opinion about intent to distribute was tantamount to expressing a view about the defendant's guilt. *Id.* at 573, 543 *A.*2d 88. In contrast, the dissenting member would have permitted the question and the expert's response. *Id.* at 575–76, 543 *A.*2d 88 (Cohen, J.A.D., dissenting).

We reversed. Writing for a unanimous Court, Justice Handler explained:

> We are satisfied in this case that the detective's opinion was based exclusively on the surrounding facts relating to the quantity and packaging of the drugs and their addictive quality, as well as the absence of drug-use paraphernalia; his explanation of these facts was clearly founded on his expertise and specialized knowledge as an expert. The conclusion he drew—that possession of these drugs was for the purpose of distribution—was similarly derived from his experience. We therefore conclude that as long as the expert does not express his opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts and evidence in light of his specialized knowledge, *the opinion is not objectionable even though it embraces ultimate issues that the jury must decide.*
>
> [*Odom, supra,* 116 *N.J.* at 78–79, 560 *A.*2d 1198 (emphasis added).]

In reaching that conclusion, the Court relied in part on *Perez, supra,* in which the prosecutor posed a highly detailed hypothetical to the State's narcotics expert and then asked " 'based on those facts, would you have an opinion as to whether or not the [cocaine seized from the person in the hypothetical] was possessed for personal use or for possession with intent to distribute?' " 218 *N.J.Super.* at 482, 528 *A.*2d 56. The expert replied, " 'Based on my training, education and experience, it is my opinion that this cocaine . . . in this particular case was possessed with the intent to distribute[.]' " *Id.* at 483, 528 *A.*2d 56. On appeal, the defendant argued that the expert's testimony amounted to an opinion that defendant was guilty. *Ibid.* The Appellate Division disagreed, concluding that the expert properly testified to the significance of the facts surrounding the seized narcotics and properly assisted the jury in assessing those facts. *Id.* at 485, 528 *A.*2d 56.

*Odom, supra,* set forth guidelines for the appropriate use of a hypothetical question in a drug case. The question must be limited to the facts adduced at trial. The prosecutor may ask the expert to express an opinion, based on those facts, whether the drugs were possessed for distribution or for personal consumption. The expert should inform jurors of the information on which the opinion is based, and must avoid parroting statutory terminology whenever possible. 116 *N.J.* at 80–82, 560 *A.*2d 1198. Obviously, the expert must walk a fine line. His or her opinion can be "expressed in terms of ultimate issues of fact, namely, whether

drugs were possessed with the intent to distribute," *id.* at 81, 560 A.2d 1198, but it cannot contain an explicit statement that "the defendant is guilty of the crime charged under the statute." *Id.* at 80, 560.A.2d 1198. Finally, trial courts should instruct the jury in respect of the proper weight to be given to the expert's opinion, reminding jurors that the ultimate decision concerning a defendant's guilt or innocence rests solely with them. *Id.* at 82, 560 A.2d 1198.

### III.

■ In applying the above tenets, we observe first that the parties do not dispute that the expert in this case properly was qualified in the field of narcotics. Moreover, the assistant prosecutor limited her hypothetical to facts presented at trial. In response, the witness expressed the view that the drugs were possessed "for distribution" rather than for S–2's "own use[.]" She did not, however, refer to defendant explicitly, nor did she refer to statutory law or express a view that an illegal drug transaction in fact had occurred. As contemplated by *Odom,* the witness also recounted the basis of her opinion. She explained that the parties exchanged an object for currency, that the encounter was brief, and that the drugs were packaged in fifty small bags. She further noted that the bags in the buyer's possession and those in the seller's possession were similar, that the drugs were concealed in a pack of cigarettes, that the exchange took place in a high-crime area, and that there was an absence of drug paraphernalia.

When asked about the money recovered from the second male in the hypothetical, the detective commented, "that's telling me he was distributing drugs." When asked about the matching baggies carried by the alleged buyer and seller, she stated, "that would tell me that S–2 was distributing them, if they are the same type of packaging." Those comments are sustainable as part of a hypothetical that did not refer to defendant by name and did not ask the witness to offer an explicit opinion on defendant's guilt. That

the hypothetical was detailed in form did not itself render it impermissible under *Odom.* Although it was declarative in nature and embraced ultimate issues that the jury had to decide, the detective's testimony likewise fell within *Odom* 's parameters.

Because defendant did not object to Detective Price's testimony at trial, the Appellate Division considered defendant's appellate arguments under the plain-error standard of review. Consistent with that standard, the panel observed at the outset of its analysis that "[i]n order to prevail, defendant must convince us that there was an error clearly capable of producing an unjust result." *Summers, supra,* 350 *N.J.Super.* at 362–63, 795 *A.*2d 308 (citing *R.* 2:10–2). We find no error in the admission of the expert's testimony, much less plain error. Even if we were to assume that an error had occurred, we would agree with the Appellate Division that defendant has not satisfied the plain-error test.

■ In that regard, the State produced substantial evidence of defendant's guilt, apart from the expert's testimony, including the drugs found on the ground and on defendant's person, the money recovered from defendant, and the eyewitness testimony of the surveillance and backup officers. More specifically, jurors heard testimony from four other State witnesses aside from Detective Price, and examined numerous exhibits demonstrating defendant's culpability in the crimes charged. In her summation to the jury that consists of thirteen typewritten pages of trial transcript, the assistant prosecutor devoted only two paragraphs to Detective Price's testimony. Measured against the entire evidence, the asserted error in Detective Price's testimony would not warrant reversal.

Unlike our dissenting colleagues, we are not persuaded that the risk of undue prejudice from the expert's testimony substantially outweighed its probative value. Detective Price's opinion was highly probative of the distribution offenses and necessary to assist members of the jury, who presumably were unschooled in the drug trade. Although, as just noted, the State presented substantial overall evidence of defendant's guilt, the expert's testi-

mony uniquely aided the jury. It did so by helping jurors to understand how drugs are packaged, priced, concealed, and sold consistent with distribution in high-crime areas.

Moreover, the trial court reduced the chance of improper prejudice by instructing the jury that it could accept all, part, or none of the detective's testimony, and that it alone had to decide questions of guilt. As the panel below more fully explained:

> [T]he judge clearly and unequivocally advised the jury that it was not bound by the expert's opinion, and was free to reject it. The judge also instructed the jury that it was within its sole and exclusive province to decide whether the facts upon which the opinion was based actually existed, and the value or weight of the opinion was not only dependent upon, but was no stronger than the underlying facts upon which it was based. As such, the jury was informed that it was the ultimate finder of fact and that it must determine the appropriate weight to give the expert testimony.
>
> [*Id.* at 367, 795 *A*.2d 308 (internal quotation marks and citation omitted).]

Lastly, we see no compelling reason to reexamine *Odom.* Nor do we believe that *Odom* has "confounded the lower courts." *Post* at 320, 823 *A*.2d at 23. We acknowledge that some courts in other jurisdictions flatly forbid expert testimony concerning intent in a drug case, concluding that it constitutes an impermissible opinion on a defendant's guilt. *See, e.g., United States v. Boyd,* 55 *F*.3d 667, 670 (D.C.Cir.1995) (concluding that such testimony is improper "even though posed as a hypothetical"). *Odom,* however, is grounded firmly in New Jersey precedent and has been reflected in our Rules of Evidence for many years. The Court concluded that *Odom* 's approach was permissible and sound when it decided that case over a decade ago. We remain convinced of that today. To hold otherwise would deprive jurors of valuable assistance as they discharge their important and often difficult responsibilities.

## IV.

The judgment of the Appellate Division is affirmed.

ALBIN, J., dissenting.

This appeal raises the question whether an expert prosecution witness can testify to the ultimate issue of the guilt of a defendant charged with possession with intent to distribute or distribution of drugs. Following this Court's ruling in *State v. Odom*, 116 *N.J.* 65, 560 *A.*2d 1198 (1989), the majority holds that an expert prosecution witness cannot opine that defendant is *guilty* of possession of drugs with intent to distribute, but can opine that defendant *possessed* the drugs with intent to distribute. *Ante* at 315, 823 *A.*2d at 20. There is no real difference in the meaning of those two examples of opinion testimony, and yet the majority's decision hinges on some imaginary distinction between the two. The rule of law should not be based on fictitious distinctions. Because I believe the prosecution's expert testified to the ultimate issue of guilt in an area not beyond the ken of the average layperson, thereby intruding on the jury's exclusive province to determine guilt or innocence, I must dissent.

This case represents an all too typical scenario of a street drug transaction observed by police who were conducting surveillance. At trial, a detective testified to his observations of defendant on a street near the boardwalk in Atlantic City. According to the detective, defendant engaged in a conversation with an individual named Dyer, and the two men walked to another location where defendant held out an object in his palm for Dyer. After taking the object, Dyer, in return, passed to defendant what appeared to be folded money. The police arrested Dyer and defendant, finding on Dyer four plastic bags of cocaine and on defendant $262 in currency, a pager, and 50 small plastic bags (identical to the ones seized from Dyer) of cocaine.

The State offered Detective Donna Price as an expert on the means and methods of drug distribution. The prosecutor presented to Detective Price a hypothetical question that mirrored the testimony of the State's witnesses and, without mentioning their names, referred to defendant as "S–2" and Dyer as "S–1." Those designations served as no more than a fig leaf to disguise their

true identities. In response to the prosecutor's questions, Detective Price stated multiple times that S–2 both possessed drugs "for distribution" and was "distributing drugs." In so doing, Detective Price pronounced, in the form of an opinion, her personal verdict of guilty.

The jury convicted defendant of a series of drug offenses, including possession with intent to distribute a controlled dangerous substance, *N.J.S.A.* 2C:35–5a(1), and distribution of a controlled dangerous substance, *N.J.S.A.* 2C:35–5a(1), –5b(3). A split Appellate Division panel affirmed defendant's conviction. *State v. Summers*, 350 *N.J.Super.* 353, 368, 795 *A.*2d 308 (App.Div.2002). I agree with Judge Kestin's dissenting opinion, which concluded that the testimony of the State's expert exceeded its permissible scope, causing irreparable prejudice. *Id.* at 368–69, 795 *A.*2d 308 (Kestin, J.A.D., dissenting). I add these words to highlight the importance of this issue.

Expert testimony is allowed to assist a jury or judge to understand evidence in areas in which an ordinary person of average intelligence and life-experience would not possess knowledge. Our evidentiary rule on expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
>
> [*N.J.R.E.* 702.]

Although opinion testimony is not objectionable even if "it embraces an ultimate issue to be decided by the trier of fact," *N.J.R.E.* 704, opinion testimony must at least serve the essential purpose of assisting the jury or judge on a subject in which the trier of fact does not possess equal knowledge, skill, or experience. *See State v. Kelly*, 97 *N.J.* 178, 208, 478 *A.*2d 364 (1984) (holding that, for expert testimony to be admissible, *inter alia*, "the intended testimony must concern a subject matter that is beyond the ken of the average juror").

In *State v. Odom, supra*, the guiding case on the subject before us, the Court gave a mixed and confusing message on the use of

expert testimony in drug cases. The Court reaffirmed the general understanding that an expert may offer his opinion on matters beyond the ken of the average juror such as the significance of drug quantity, packaging, value, purity, and paraphernalia. 116 *N.J.* at 76, 78–79, 560 *A.*2d 1198. But the Court also stated irreconcilable principles that have confounded the lower courts. On the one hand, the Court stated repeatedly the impropriety of an expert expressing in the form of an opinion his belief of a defendant's guilt: "an expert's testimony that expresses a direct opinion that defendant is guilty of the crime charged is wholly improper," *id.* at 77, 560 *A.*2d 1198; "as long as the expert does not express his opinion of defendant's guilt ... the opinion is not objectionable even though it embraces ultimate issues that the jury must decide," *id.* at 79, 560 *A.*2d 1198; "[i]t may be that an expert's opinion is expressed in such a way as to emphasize that the expert believes the defendant is guilty of the crime charged under the statute. This would be impermissible," *id.* at 80, 560 *A.*2d 1198. On the other hand, the Court concluded that "an expert opinion that the drugs were held for distribution, even though expressed in words that are similar to the statutory definition of the offense, does not rise to the level of an assertion that the defendant committed the crime charged or is guilty of the statutory offense," *id.* at 81, 560 *A.*2d 1198 and "the expert may be asked if, based on ... assumed facts, he or she has an opinion whether the drugs were possessed for personal use or for the purpose of distribution," *id.* at 82, 560 *A.*2d 1198.

The distinctions made in *Odom* and now repeated by the majority are too insubstantial and ethereal for the mind to grasp. When an expert offers his opinion that a defendant possessed the drugs with intent to distribute—the very phrase by which the crime is defined, the jury knows that the expert has expressed his belief in the defendant's guilt, and no amount of semantic legerdemain can alter that conclusion.

A number of jurisdictions preclude expert prosecution witnesses from opining as to the defendant's intent in possession with intent

to distribute cases. *See, e.g., United States v. Boyd*, 55 *F*.3d 667, 671 (D.C.Cir.1995) (holding "that expert testimony concerning the *modus operandi* of individuals involved in drug trafficking does not violate [*F.R.E.*] 704(b)," but that expert testimony as to defendant's intent does); *State v. Campbell*, 225 *Conn.* 650, 626 *A*.2d 287, 291 (1993) (holding "that the trial court incorrectly permitted [the expert witness] to testify as to whether in his opinion the defendant possessed the drugs with the intent to sell or with the intent to use them personally"); *Fluellen v. State*, 703 *So*.2d 511, 513 (Fla.Dist.Ct.App.1997) (reversing trial court's admission of arresting officer's testimony "that the quantity of cocaine possessed by the [defendant] indicated that the [defendant] possessed the drug with the intent to sell, rather than for personal use .... because it exceeded the limitations of expert testimony and invaded the province of the jury"); *State v. Shumpert*, 554 *N.W.*2d 250, 254 (Iowa 1996) (holding that expert testimony admissible where "[expert] witness did not testify about whether [defendant] possessed the requisite intent to deliver; he merely expressed his opinion that the manner of packaging was consistent with the manner of packaging associated with drug dealing"); *Commonwealth v. Woods*, 419 *Mass.* 366, 645 *N.E.*2d 1153, 1158 (1995) (holding that "police officers' testimony that the defendant was involved in a drug sale was, in effect, expert opinion that the defendant was guilty of the charges" and "was unnecessary and impermissibly intruded on the jury's vital fact finding function"); *People v. Williams*, 224 *A.D.*2d 725, 638 *N.Y.S.*2d 705 (App.Div.) (holding expert's testimony "that the defendant's possession of 55 vials of crack cocaine evidenced an intent to sell the drugs ... invad[ed] the exclusive province of the jury in determining an ultimate issue of fact"), *appeal denied*, 88 *N.Y.*2d 855, 644 *N.Y.S.*2d 702, 667 *N.E.*2d 352 (1996); *Rodriguez v. Commonwealth*, 18 *Va.App.* 277, 443 *S.E.*2d 419, 424 (1994) (holding that expert "opinion as to whether a person situated as the defendant intended to distribute cocaine" was "improper ... because it was an opinion by an expert witness going to the ultimate issue of fact

before the jury"), *aff'd* 249 *Va.* 203, 454 *S.E.*2d 725 (1995). I believe that those cases represent the better rule of law.

To the extent that Detective Price's testimony was an appropriate subject for expert testimony pursuant to *N.J.R.E.* 702, its admissibility remained contingent on a weighing of its probative value versus its prejudicial effect pursuant to *N.J.R.E.* 403. *See State v. Berry,* 140 *N.J.* 280, 298–300, 658 *A.*2d 702 (1995) (discussing federal and out-of-state cases where "expert testimony in drug cases embracing ultimate issues" held to be "so prejudicial as to require exclusion" (citations omitted)). Although the jury is charged with judging the credibility of each witness and determining the weight to be afforded the testimony of each witness, a jury may be unduly swayed by an expert's credentials, particularly if the expert is a law enforcement officer. *See, e.g., Boyd, supra,* 55 *F.*3d at 672 ("If a jury has reason to be unsure of a defendant's guilt, but is made to listen to an 'expert' who claims to know the defendant's state of mind, the jurors may rely on the purported expertise of the [prosecution] witness to cure the ambiguity that they face."); *United States v. Fosher,* 590 *F.*2d 381, 383 (1st Cir.1979) (affirming trial court's holding that "the proffered expert testimony would create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness"); *State v. Cavallo,* 88 *N.J.* 508, 518, 443 *A.*2d 1020 (1982) ("While juries would not always accord excessive weight to unreliable expert testimony, there is substantial danger that they would do so, precisely because the evidence is labeled 'scientific' and 'expert.' ").

Detective Price's testimony far exceeded an explanation of the *modus operandi* of the narcotics trade and, in fact, amounted to a direct conclusion of defendant's guilt. The State's expert can provide insight to the jury concerning the narcotics trade beyond the ken of the average juror without interfering with defendant's right to a fair trial. For example, in the case of an individual caught in possession of a kilogram of cocaine broken down into hundreds of individual packages, a prosecution drug expert could

offer an opinion that the quantity and purity of the drugs and manner of packaging is inconsistent with personal use. If scales or other drug paraphernalia indicative of distribution were found in the individual's possession, an expert would be allowed to testify as to the common and ordinary use of those instruments by drug traffickers. An expert would be permitted to testify to any details concerning the *modus operandi* of drug distribution that would enlighten a jury. However, an expert is no more qualified than a juror to determine the defendant's state of mind. The expert may provide technical and scientific information from his area of specialized knowledge and training from which a jury can draw an inference concerning the defendant's state of mind. But in such cases where the ultimate conclusion as to *mens rea* requires no more than applied commonsense, ordinary life-experience, and simple logic, expert testimony encroaches on the exclusive prerogative of the jury, and the resulting prejudice overwhelms any salutary benefit of the testimony. An expert, who advises the jury that the defendant possessed drugs with intent to distribute, is, in essence, telling the jury that the State has proven all the elements of the crime. In that respect, the expert has announced his own verdict, whether or not he uses the word "guilty."

In *State v. Landeros*, 20 *N.J.* 69, 118 *A.*2d 521 (1955), this Court recognized the significant prejudice that follows when a police officer testifies to his personal opinion of defendant's guilt. We found "substantial and vital" error in the admission of a police captain's testimony that the defendant was "as guilty as Mrs. Murphy's pet pig." *Id.* at 74–75, 118 *A.*2d 521. Testimony of this kind is prejudicial because

> [w]ho, in the layman's mind, should know better than the captain of police whether or not the defendant was guilty, and when that gentleman had pronounced the defendant's doom, the jurors had a right to assume the court acquiesced, as the judge offered no comment or instructions either then or later in his charge to the contrary. What juror, under these circumstances, would have the temerity to find otherwise?
>
> [*Id.* at 75, 118 *A.*2d 521.]

Detective Price's testimony in this case was the equivalent of saying defendant was "as guilty as Mrs. Murphy's pet pig." In

my opinion, the trial court's general instruction to the jurors reminding them that they alone were the finders of fact did not render the admission of the expert's testimony harmless. If, as the State suggests, defendant's conviction rests on an " 'overwhelming' quantum of evidence," the State should have no difficulty prosecuting defendant without its expert witness offering her opinion as to defendant's guilt.

I would reverse and remand for a new trial.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA, and ZAZZALI—5.

*For reversal and remandment*—Justices LONG and ALBIN—2.