962 A.2d 1087

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RAHMANN REEDS, A/K/A DENNIS COAST, RAHMANN
ABDUL REEDS, DEFENDANT–APPELLANT.

Argued November 3, 2008—Decided January 22, 2009.

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Perrone* and *Roger L. Camacho,* Designated Counsel, on the brief).

*Catherine A. Foddai,* Senior Assistant Prosecutor, argued the cause for respondent (*John L. Molinelli,* Bergen County Prosecutor, attorney).

*Robyn B. Mitchell,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

A jury convicted defendant, Rahmann Reeds, of third-degree possession of heroin, *N.J.S.A.* 2C:35–10(a)(1), and second-degree possession of heroin with intent to distribute, *N.J.S.A.* 2C:35–5(a)(1) and (b)(2) (possessing quantity of one-half ounce or more, but less than five ounces). In this appeal, defendant contends that the State's expert's testimony on drug possession and distribution methods exceeded permissible limits. Specifically, defendant points to a portion of the expert's testimony that responded to a hypothetical question. The hypothetical reflected the facts of defendant's arrest. In response, the expert opined that defendant had been in "constructive possession" of the drugs recovered by the police from the car in which he was driving. Defendant claims that the testimony violated *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), and subsequent cases, because (1) the subject matter of the expert's testimony, addressing who was in possession of the drugs found in the car, was not beyond the ken of average jurors; and (2) the expert's opinion impermissibly invaded the jury's province by addressing the ultimate issue of defendant's guilt.

We agree that the expert's testimony in this matter went too far and exceeded permissible limits. That this Court has recognized a beneficial and appropriate role for a drug expert's testimony that explains unfamiliar drug trafficking methods to jurors was not

meant to signal that there are no appreciable limits to such expert testimony. The expert may not usurp the province of the jury to decide the ultimate issue of defendant's guilt. Here, the expert's assessment that defendant constructively possessed the drugs found in the car remained part of the record to be considered by the jury. The question of constructive possession of the drugs found in the car was one that the jury was capable of and required to assess itself, by drawing inferences and applying common logic and knowledge. Because the expert should not have been permitted to opine on the ultimate issue of whether defendant possessed the drugs found, plain error occurred. Accordingly, we are compelled to reverse defendant's convictions and to remand for a new trial.

## I.

To understand the import of the expert's testimony in defendant's trial, we summarize the facts that were adduced at trial.

On August 14, 2002, two Bergen County police officers stopped a vehicle traveling on Route 95 from the George Washington Bridge. The driver, defendant, allegedly had been driving excessively fast and erratically. Mark Whitley and Isaac Outen were passengers in the vehicle. When asked by one of the officers for his driving credentials, defendant provided a false name and explained that he did not have a license or an insurance card. During that colloquy with defendant, the officer smelled the odor of burnt marijuana and observed an open beer bottle in the rear portion of the interior cabin of the vehicle, near where Outen was seated. The officer made defendant exit the vehicle and, in response to further questioning, defendant admitted that his license was suspended and explained that the car was borrowed.

Returning to question the two passengers still in the car, the officer began with Whitley, the front seat passenger, when he noticed a burnt marijuana joint in the center console. After the officer had Whitley exit the vehicle, the officer saw several packages of heroin on the floor where Whitley's feet had been. The

officer searched the area under the front passenger seat and found fifteen unopened bricks of heroin, each containing five bundles of ten heroin packages. He also found an additional opened brick of heroin. All totaled, the bricks contained 798 small packages of heroin. In addition, the officer found six bags of marijuana in the interior front passenger area.

A grand jury returned indictments against defendant, Whitley, and Outen for third-degree possession of a controlled dangerous substance, *N.J.S.A.* 2C:35–10(a)(1) (count one); against defendant, Whitley, and Outen for second-degree possession of heroin with the intent to distribute, *N.J.S.A.* 2C:35–5(a)(1) and (b)(2) (count two); and against defendant and Outen for third-degree hindering apprehension, *N.J.S.A.* 2C:29–3(b)(4) (count three).[1]

The defendants were tried together. During the four-day trial, the State presented several witnesses, including Detective David Swan, an expert in narcotics distribution and possession.[2] During direct examination of Detective Swan by the prosecutor, the following exchange occurred:

Q [Prosecutor] [A]ssume hypothetically that three individuals are driving in a borrowed vehicle. Let's call the driver S-1, suspect one. Front passenger, suspect two. And assume there is a rear passenger behind the front passenger which we'll call suspect three, S-3.

A [Detective Swan] Okay.

Q And they're traveling from New York City on Route 95 so that you know that they're coming out of New York. And the individuals are traveling in the vehicle at night, approximately a little before 9:00 PM on a week night. They're driving in an erratic fashion, pulled over. The front passenger and the rear passenger, back passenger at some point are asked their names and they give false names. An officer who asks the front passenger for their paperwork smells marijuana in the vehicle and notices in the vehicle an open container of beer.

---

[1] Count three was dismissed prior to jury selection.

[2] Detective Swan's qualifications as an expert in this drug possession case were not challenged. At the time, Detective Swan had been a member of the Bergen County Prosecutor's Office Narcotics Task Force for more than eleven years. He had investigated fifty-five to sixty heroin cases, had provided an expert opinion, without testifying, approximately 300 times, and had thrice testified as an expert in heroin possession prosecutions.

After that[,] later found in the vehicle, in the front passenger section, right between—on the floor in front of the seat but where their feet would be are found loose folds of what's determined to be heroin and also scattered on the floor are—by the feet of the front passenger are six bags of marijuana and underneath the seat are found fifteen bricks of heroin, determined to be heroin, as well as found additionally is a sixteenth brick. That sixteenth brick had been opened so that there were forty bags and seven or eight various loose folds.

On the back passenger assume is found cigars or brown cigarettes, Phillies. And on the persons of the individuals are found a totality of currency of nine hundred fourteen dollars.

A Okay.

Q Assuming all those hypothetical facts, *do you have an opinion as to why the drugs, specifically the heroin, totaling several hundred bags or folds, would be possessed?*

A *My opinion they would be possessed with the intent to distribute.*

Q *And would that opinion be as to suspects one, two and three?*

A *All constructive possession with the intent to distribute.*

. . . .

Q *And in your training and experience, have you ever had an experience where three individuals would have been located in a vehicle under these hypothetical facts where it would not have been possessed by them?*

[Defense counsel for Whitley]: *Objection, judge. That's a conclusion the jury has to make.*

Court: She's saying hypothetically in his training and experience has he ever found that.

[Defense counsel for Whitley]: I don't think she said hypothetically. I think she said has he ever been involved in a case where this happened. She wasn't phrasing it in hypothetical terms.

[Prosecutor rephrases the question]

Q Hypothetically considering these facts or in your experience would it be your opinion these drugs could be possessed not with the intent to be distributed?

A I believe they would be possessed with the intent to be distributed.

Q Why else do you have that opinion besides the amount?

A The amount, the fact that there's three individuals in the vehicle. It's been my experience doing road stops, pulling people over during interdictions that generally when people go to purchase drugs they don't go alone because there's a danger involved where not only do they have to worry about the police, being detected by the police, but other drug dealers or potential robbers, stickup men. So one may act as a lookout. One may act as a money guy. One may act as security.

[(Emphasis added).]

After Detective Swan's direct-examination testimony, the term "constructive possession" came up again during co-defendant Whitley's counsel's cross-examination. Whitley's counsel asked

Detective Swan if his opinion would differ had two people been in the car instead of three. Detective Swan replied, "No, it's the same. It's still constructive possession, yes." Counsel for Whitley retorted, "That's an answer the jury is going to have to decide, a question the jury is going to have to answer. You're being asked to testify whether or not those drugs were possessed with the intent to distribute period."

After cross-examination of Detective Swan, the concept of constructive possession was raised again by the prosecutor on re-direct examination:

Q And you've testified you believe in the hypothetical the defendants would have possessed the heroin constructively for distribution?

[Defense counsel for Whitley]: Objection. I don't think that was testimony. I believe that's legal conclusion.

The Court: It's leading. Sustained.

. . . .

Q What was your position as to why approximately eight hundred decks of heroin in the scenario I gave you would be possessed for?

A I believe I said they were constructively possessed with the intent to distribute.

During the charge conference, counsel for all three defendants asked the court to provide a limiting instruction informing the jurors to consider Detective Swan's opinion only to determine whether the defendants possessed the drugs for personal use or for distribution; and not to consider his opinion in determining whether the drugs were constructively possessed because that was an issue of fact for the jurors to decide themselves. The trial court responded by issuing the following limiting instruction:

In examining an expert witness counsel may propound to her or him a type of question known in the law has [sic] a hypothetical question. You heard the Prosecutor say assuming this and assuming that. That was the form of the hypothetical question.

By such question the witness is asked to assume to be true a hypothetical state of facts and to give an opinion based on that assumption.

In permitting such a question the Court does not rule and does not necessarily find that all the assumed facts have been proved. It only determines that those assumed facts are within the possible range of the evidence.

It is for you, the jury, to determine and to find from all the evidence whether or not the facts assumed in a hypothetical question have been proved. And if you

should find that any assumption in such a question has not been proved, you are to determine the effect of the failure of proof on the value and weight of the expert opinion based on that assumption.

The testimony of Detective David Swan was limited to the issue of whether the drugs possessed were for personal use or for distribution. The issue of possession and/or constructive possession is for you to decide based on the actual facts presented.

The jury convicted defendant of third-degree possession of heroin and second-degree possession of heroin with the intent to distribute. Defendant's motion for a new trial, based on the State's purported failure to prove various elements of the charged offenses, was denied. The court merged counts one and two and sentenced defendant to an extended term of fifteen years' incarceration with a six-year period of parole ineligibility pursuant to *N.J.S.A.* 2C:43–6(f).

Defendant appealed, raising several issues before the Appellate Division, but in light of our limited grant of certification in this matter, we note only one: that Detective Swan's testimony exceeded the bounds of acceptable hypothetical question testimony. In respect of that argument, the Appellate Division held that the hypothetical line of questioning of Detective Swan complied with the parameters set forth in *Odom, supra,* 116 *N.J.* 65, 560 *A.*2d 1198, and *State v. Summers,* 176 *N.J.* 306, 823 *A.*2d 15 (2003). In reaching its conclusion, the panel applied the plain error standard of review because it found that defendant's counsel did not object to Detective Swan's use of the phrase "constructive possession" during his testimony. Further, the Appellate Division determined that the trial court's limiting instruction during its charge to the jury quelled any potential prejudice that may have resulted from Detective Swan's testimony about defendant's constructive possession of the drugs found in the car.[3]

We entered a limited grant of defendant's petition for certification, *State v. Reeds,* 195 *N.J.* 523, 950 *A.*2d 909 (2008), to review

---

[3] The Appellate Division dismissed defendant's other claims of error on the merits and affirmed defendant's convictions and sentence, remanding only for a calculation of defendant's gap time credits.

whether the expert testimony about constructive possession of the drugs found exceeded the parameters of acceptable expert testimony in a drug prosecution trial.

## II.

■ Our analysis begins with the Rules of Evidence, specifically *Rule* 702, which governs the admissibility of expert testimony and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." It is incumbent on the proffering party to show that (1) the intended testimony concerns a subject matter beyond the ken of an average juror; (2) the field is at a state of the art such that an expert's testimony would be reliable; and (3) the witness has expertise sufficient to offer the intended testimony. *See State v. Jenewicz*, 193 *N.J.* 440, 454, 940 *A.2d* 269 (2008).

■ The use of expert testimony about the methods employed by drug traffickers to package and to distribute illegal drugs for sale has been long recognized as permissible under *Rule* 702 standards because such information is a specialized subject matter that is beyond the ken or normal life experience of the average juror. *See Odom, supra*, 116 *N.J.* at 76, 560 *A.2d* 1198 (permitting drug expert's testimony, including opinion testimony on possessor's likely intent and purpose to distribute based on particular characteristics of drug possession set forth through assumed facts). Such testimony, when provided through an expert, aids a jury's understanding of the evidence adduced in a drug prosecution and often may be necessary to "explain the significance of the properties, packaging and value of illegal drugs." *Ibid.* Without such testimony about drug-trade practices, lay jurors would not " 'know what a person who possessed [a certain quantity of drugs in certain circumstances] was going to do with it.' " *Id.* at 76, 560 *A.2d* 1198 (quoting *State v. Perez*, 218 *N.J.Super.* 478, 485, 528

*A*.2d 56 (App.Div.1987)); *see also Summers, supra,* 176 *N.J.* at 312–17, 823 *A*.2d 15 (recognizing same).

*Odom, supra,* involved a drug possession case in which the prosecutor asked the State's expert to assume a number of facts, and then stated a set of facts consistent with those adduced at trial. 116 *N.J.* at 67–69, 560 *A*.2d 1198. Based on the facts so presented, the prosecutor asked the expert to opine whether the defendant would have possessed the drugs for his own use or with the intent to distribute them. *Id.* at 69, 560 *A*.2d 1198. In affirming on appeal the admission of that testimony, this Court explained that it was

> satisfied in this case that the detective's opinion was based exclusively on the surrounding facts relating to the quantity and packaging of the drugs and their addictive quality, as well as the absence of drug-use paraphernalia; his explanation of these facts was clearly founded on his expertise and specialized knowledge as an expert. The conclusion he drew—that possession of these drugs was for the purpose of distribution—was similarly derived from his experience. We therefore conclude that as long as the expert does not express his opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts and evidence in light of his specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide.
>
> [*Id.* at 78–79, 560 *A*.2d 1198.]

We also approved the use of a hypothetical question as an appropriate vehicle through which an expert could testify in respect of inferring intent or purpose when drugs are possessed under certain circumstances. *See id.* at 76–81, 560 *A*.2d 1198. And, we reaffirmed the use of such hypothetical questions when that practice was called into question in *Summers, supra,* 176 *N.J.* at 311, 317, 823 *A*.2d 15.

█ Indeed, in *Summers,* this Court relied again on *Odom's* guidelines for the appropriate use of a hypothetical question:

> The question must be limited to the facts adduced at trial. The prosecutor may ask the expert to express an opinion, based on those facts, whether the drugs were possessed for distribution or for personal consumption. The expert should inform jurors of the information on which the opinion is based, and must avoid parroting statutory terminology whenever possible. Obviously, the expert must walk a fine line. His or her opinion can be "expressed in terms of ultimate issues of fact, namely, whether drugs were possessed with the intent to distribute," but it cannot

contain an explicit statement that "the defendant is guilty of the crime charged under the statute." Finally, trial courts should instruct the jury in respect of the proper weight to be given to the expert's opinion, reminding jurors that the ultimate decision concerning a defendant's guilt or innocence rests solely with them.

[*Id.* at 314–15, 823 *A.*2d 15 (quoting *Odom, supra,* 116 *N.J.* at 80–82, 560 *A.*2d 1198) (internal citations omitted).]

Thus, we carefully permit an expert to express an opinion in response to a hypothetical even when such testimony "embraces an ultimate issue to be decided by the trier of fact," *N.J.R.E.* 704, so long as the probative value of the circumscribed testimony is not substantially outweighed by the risk of causing undue prejudice, *N.J.R.E.* 403. *See State v. Berry,* 140 *N.J.* 280, 298, 658 *A.*2d 702 (1995) (explaining necessity for *Rule* 403 balancing, stating that "[i]n drug prosecutions, the risk of prejudice has prompted courts to exercise caution in determining whether expert testimony touching on ultimate issues properly was admitted at trial").

 Because it is the exclusive responsibility of the jury to determine guilt, *State v. Simon,* 79 *N.J.* 191, 199, 398 *A.*2d 861 (1979), there is always the concern about the potential for an expert's opinion on a hypothetical question to slip dangerously close to usurpation of the jury's role by essentially telling the jurors how to resolve a case. *See State v. Nesbitt,* 185 *N.J.* 504, 514, 888 *A.*2d 472 (2006) (discussing court's duty to perform gatekeeper role in determining whether testimony is reasonably needed and is not unduly prejudicial); *see also Odom, supra,* 116 *N.J.* at 81–82, 560 *A.*2d 1198. To guard against that concern, *Odom* emphasized that, when using a hypothetical question in cases involving possession and distribution of narcotics, the question must be limited to the evidence adduced at trial and must focus on

the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or [distribution].

[*Odom, supra,* 116 *N.J.* at 81–82, 560 *A.*2d 1198 (quoting *State v. Odom,* 225 *N.J.Super.* 564, 573, 543 *A.*2d 88 (App.Div.1988)).]

Once that foundation is established, the prosecutor may ask the expert to express an opinion on whether, based on those facts, the drugs were possessed for distribution purposes or personal use. *Id.* at 82, 560 *A.*2d 1198.

*Odom* continues to govern the use of expert testimony in narcotics prosecutions, permitting the incorporation of responses to hypothetical questions to help jurors understand the likely intent or purpose of a defendant in respect of drugs possessed. That said, *Odom's* continued application is not without boundaries. In *Nesbitt, supra,* we cautioned that *"Odom* does not license the use of a narcotics expert to tell a jury that which is obvious." 185 *N.J.* at 514, 888 *A.*2d 472. Because *Odom* should not result in the automatic use of expert testimony in all drug cases, we explained in *Nesbitt* that

> [t]rial courts are expected to perform a gatekeeper role in determining whether there exists a reasonable need for an expert's testimony, and what the parameters of that testimony may be.... The failure of a defendant to object to expert testimony does not relieve the trial court of its gatekeeper responsibilities....
> [*Id.* at 514–15, 888 *A.*2d 472.]

The *Nesbitt* Court instructed trial courts to be sensitive to whether there is true need for the hypothetical and expert testimony, *id.* at 517–19, 888 *A.*2d 472, and underscored the importance of preventing the expert testimony from tracking too closely the language of the pertinent criminal statute, *id.* at 517, 888 *A.*2d 472. Further, *Nesbitt* discouraged the use of legal terminology with specialized meanings and emphasized *Odom's* requirement that the governing statutory language be paraphrased where possible. *Id.* at 518–19, 888 *A.*2d 472. By adhering to such cautionary instructions, trial courts can ensure that a drug expert's testimony plays a legitimate and valuable role in drug possession and distribution cases by helping the jury in realms unknown and unfamiliar to them when assessing the likely intent of a putative drug trafficker.[4]

---

[4] The criticism that has been leveled at *Odom* and its progeny contends that the probative value of expert testimony concerning a defendant's intent or

## III.

### A.

 In the present case, police stopped a car transporting a large quantity of heroin—sixteen bricks—into the state allegedly for purposes of distribution, not just for personal possession and use. The trial and appellate courts reasonably determined that jurors might not be familiar with the common practices used by those in the drug distribution trade when acquiring and transporting drugs for distribution, such as the practice of traveling with multiple persons in a borrowed car to secure drugs at less expensive rates from a marketplace like New York City. Just as jurors are unfamiliar with the variety of methods used in the hand-to-hand sale of drugs on the street, *see Nesbitt, supra,* 185 *N.J.* at 515, 888 *A.2d* 472, a similar lack of knowledge and unfamiliarity can extend to the many ways in which drugs make their way to ultimate purchasers for use.

In this matter, the trial court did not err by allowing an expert to testify that a drug possessor's likely intent and purpose in possessing heroin in the amount and circumstances present here was to engage in distribution. Such testimony reasonably was determined to be helpful to jurors in understanding a specialized area that was beyond their ken.

---

purpose in possessing drugs is exceeded by the resulting prejudice from that testimony. *See Nesbitt, supra,* 185 *N.J.* at 520–22, 888 *A.2d* 472 (Albin & Long, JJ., dissenting); *Summers, supra,* 176 *N.J.* at 318–24, 823 *A.2d* 15 (Albin & Long, JJ., dissenting). Our dissenting colleagues have argued that "[a]fter an expert explains the significance of the methods and means of drug dealing—matters outside common knowledge—" jurors are then capable of drawing an inference as to a defendant's state of mind. *Nesbitt, supra,* 185 *N.J.* at 521, 888 *A.2d* 472 (Albin & Long, JJ., dissenting); *Summers, supra,* 176 *N.J.* at 323, 823 *A.2d* 15 (Albin & Long, JJ., dissenting). Obviously, the Court's holdings reflect its recognition that the jury benefits from hearing the expert's opinion in respect of the underlying intent or purpose of a drug possession. By consolidating the set of facts relied on by the expert, the jury hears the entire basis for the opinion reached about the likely intent or purpose underlying particular possessory circumstances. That said, it is entirely different for a drug expert to undertake to opine on whether drugs were possessed by a defendant.

█ That said, our analysis cannot end there. Although the aforesaid portion of the expert's testimony was helpful and probative evidence, there was another portion to the expert's testimony that must be separately analyzed because it carries a substantial potential for prejudice. Specifically, we must assess the admissibility of the further testimony by the expert about whether all or any persons traveling in the car in which these drugs were found constructively possessed the drugs. If the probative value of that portion is substantially outweighed by the danger of undue prejudice to defendant, then it should not have been admitted. *See* *N.J.R.E.* 403; *Nesbitt, supra,* 185 *N.J.* at 515, 888 *A.*2d 472.

Here, after introducing a hypothetical that tracked *Odom's* foundational requirements for reflecting the facts as presented by the State, the following exchange occurred between the prosecutor and the expert:

Q [Prosecutor] Assuming all those hypothetical facts, do you have an opinion as to why the drugs, specifically the heroin, totaling several hundred bags or folds, would be possessed?

A [Expert] *My opinion they would be possessed with the intent to distribute.*

Q And would that opinion be as to suspects one, two and three?

A *All constructive possession with the intent to distribute.*

[(Emphasis added).]

Although the prosecutor appeared to ask for an opinion about the intent of the participants, the last response by the expert inappropriately addressed the point of constructive possession. Thus, the expert reached to address the factual issue about who in the car could be found to be in possession of the drugs. That should not have been permitted.

█ Repeatedly, this Court has cautioned against the admission of expert testimony that tracks the "precise terminology," and particularly the legalese, of an applicable criminal statute. *Odom, supra,* 116 *N.J.* at 82, 560 *A.*2d 1198. "Constructive possession," the phrase used by Detective Swan, is a legal term referenced in the statutes under which defendant was charged. *See N.J.S.A.* 2C:35–10(a)(1) ("It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a

controlled dangerous substance...."). Possession also is an element of both crimes for which defendant was charged, third-degree possession of heroin, *N.J.S.A.* 2C:35–10(a)(1), and second-degree possession of heroin with the intent to distribute, *N.J.S.A.* 2C:35–5(a)(1). Plainly, such possession can be constructive, meaning that " 'although [a defendant] lacks physical or manual control, the circumstances permit a reasonable inference that [the defendant] has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time.' " *State v. Lewis,* 185 *N.J.* 363, 371, 886 *A.*2d 643 (2005) (quoting *State v. Spivey,* 179 *N.J.* 229, 236–37, 844 *A.*2d 512 (2004) (internal citation and quotation marks omitted)). However, we rely on juries to determine whether a defendant constructively possessed an object, which is why the expert's testimony opining on who constructively possessed the drugs was not probative evidence.

Although expert testimony may be employed when a defendant's drug charge involves possession that may be constructive, courts have used care in defining the parameters of permissible expert testimony to ensure that the expert does not answer for the jury the actual question of whether the drugs or other items in issue were constructively possessed. For example, in *Spivey, supra,* the determination about constructive possession of a firearm was left to the jury, although the State's drug expert was allowed to give limited testimony that informed the jurors about the practice by drug dealers of arming themselves with guns for protection. 179 *N.J.* at 240, 844 *A.*2d 512; *see also State v. Hurdle,* 311 *N.J.Super.* 89, 94–98, 709 *A.*2d 298 (App.Div.1998) (affirming jury determination of constructive possession of drugs where form of expert testimony in response to hypothetical question complied with *Odom* and expert's testimony focused on his opinion that drugs were possessed with intent or purpose to resell or distribute).

Here, by mimicking the language of the statute, and positing on the pivotal legal element, the expert's testimony on constructive

possession of drugs found in the vehicle did not constitute probative, helpful testimony for the jury. *See Nesbitt, supra,* 185 *N.J.* at 517, 888 *A.*2d 472 ("Expert testimony that recites the legal conclusion sought in a verdict is not helpful to the jury."). Rather, the expert's constructive possession opinion was tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession crimes for which defendant was charged, which clearly was unduly prejudicial. Although Detective Swan's testimony, otherwise, offered legitimate assistance to the jury by providing insight into technical areas involving the distribution and transport of bulk narcotics, the constructive-possession portions of his trial testimony exceeded *Odom's* parameters, and presented undue prejudice that substantially outweighed any probative value from that evidence.

▮▮▮ Moreover, the resulting jury instruction did not cure the prejudice. *See Odom, supra,* 116 *N.J.* at 82, 560 *A.*2d 1198. When explaining to the jury the proper weight to be accorded to the expert testimony presented, the trial court added that

[t]he testimony of Detective David Swan was limited to the issue of whether the drugs possessed were for personal use or for distribution. The issue of possession and/or constructive possession is for you to decide based on the actual facts presented.

That confounding instruction only exacerbated the original error. Rather than striking the offensive portion of the expert's testimony, the court essentially instructed the jury that, in deciding the issue of constructive possession, Detective Swan's opinion remained viable—an opinion that answered the very question with which the jury was charged.

### B.

▮▮▮ Defendant asserts that this case should be decided based on the harmless-error standard of review. Defendant claims entitlement to that standard because co-defendant Whitley's attorney objected to the constructive-possession question and answer that occurred during the direct examination of Detective Swan and

because defendant's counsel requested that the trial court instruct the jury to disregard the constructive-possession testimony. While that objection by co-counsel did have the effect of placing the court on notice of the problem caused by Swan's testimony, defendant's own counsel never objected to Detective Swan's constructive-possession testimony. Further, defendant's counsel acceded to the jury instruction issued by the court.

Ordinarily, when counsel fails to object to offensive testimony, we would apply the plain error standard of review, meaning that the error must "have been clearly capable of producing an unjust result." *R.* 2:10-2. We need not perseverate over which standard of review ought to control in this setting, however, because under either standard we would reverse this conviction. Allowance of the constructive possession testimony was plainly erroneous and the resulting prejudice was not harmless. The court did not strike the constructive-possession testimony or otherwise act immediately to curtail its impact on the jury. In this case involving expert testimony that reached and addressed the ultimate issue of defendant's possession of the drugs found in the car, we conclude that any "failure of ... defendant to object to [the] expert testimony d[id] not relieve the trial court of its gatekeeper responsibilities" in relation to *Odom's* requirements. *Nesbitt, supra,* 185 *N.J.* at 515, 888 *A.2d* 472. Further, as noted, we perceive the court's limiting instruction during the jury charge to be not only ineffective in curing the problem, but also confounding for the jury because it allowed the testimony to be considered when the jury assessed defendant's guilt.

Many cases have found plain error when a trial court erroneously admitted expert testimony in a drug distribution trial that involved a straightforward drug transaction, in which police officers observed the defendant hand an object to an alleged purchaser in exchange for money. *See, e.g., State v. Boston,* 380 *N.J.Super.* 487, 489, 882 *A.2d* 987 (App.Div.2005), *certif. denied,* 186 *N.J.* 243, 892 *A.2d* 1290 (2006); *State v. Singleton,* 326 *N.J.Super.* 351, 741 *A.2d* 168 (App.Div.1999); *State v. Baskerville,* 324 *N.J.Super.*

245, 247–54, 735 A.2d 39 (App.Div.1999). In those instances, reviewing courts held that the introduction of ultimate-issue testimony in areas well within a juror's knowledge amounted to plain error because "an essential aspect of the proofs became irredeemably tainted by a risk of prejudice far outweighing its probative value." *Baskerville, supra,* 324 *N.J.Super.* at 263–64, 735 A.2d 39 (holding that factual evidence, including undercover detective's observation of defendant engaging in hand-to-hand currency exchanges and finding $897 in currency on defendant's person, irredeemably tainted by expert opinion that defendant in hypothetical was "selling drugs"); *see also Singleton, supra,* 326 *N.J.Super.* at 353–54, 741 A.2d 168 (explaining that evidence, indicating defendant exchanged currency and possessed heroin and $200, became contaminated "with prejudicial qualities not easily cured" by introduction of expert opinion that hypothetical defendant "was engaging in a street level distribution scheme ... selling drugs to different individuals").

Similarly, the present case involved a straightforward vehicle stop and search, during which police recovered sixteen bricks of heroin and six bags of marijuana in defendant's vehicle. The evidence at trial included the testimony of the arresting officer who observed the drugs in the vehicle that defendant drove, and a forensics expert who verified that the recovered materials contained illegal narcotics. Although we had no difficulty agreeing with the courts below that Detective Swan's testimony regarding general practices and customs of drug procurement for distribution purposes was admissible, the further testimony in respect of constructive possession usurped the jury's role as the ultimate fact-finder and irredeemably tainted all of the evidence presented. Therefore, by admitting Detective Swan's testimony opining on defendant's constructive possession of the drugs found in the car, and by failing to cure that prejudicial portion of Swan's testimony when instructing the jury, plain error was allowed to occur.

Contrary to the State's argument, we find this matter to be distinguishable from *Nesbitt, supra,* where we did not find plain

error. 185 *N.J.* at 518–19, 888 *A.2d* 472. *Nesbitt* involved an atypical drug transaction during which defendant held neither the drugs nor the money involved in the transaction. *Id.* at 508, 888 *A.2d* 472. The prosecutor, after using a hypothetical that mirrored the facts adduced, asked the expert "[w]ould you be able to form an opinion about whether or not person B *was complicit* (sic) in the distribution of those drugs to the person in the vehicle?" *Id.* at 509, 888 *A.2d* 472 (emphasis added). The expert replied that the individual who corresponded to defendant in the hypothetical was "complicit in distributing drugs." *Id.* at 509, 888 *A.2d* 472. Although the language of the hypothetical did include some terminology of the applicable criminal statutes, because of the atypical nature of the drug transaction involved and because *Odom's* requirements otherwise were followed, this Court did not find plain error from that confluence of events. *Id.* at 519, 888 *A.2d* 472. On balance, the jury was found to have benefited from the expert's testimony. *Ibid.*

In the present case, the expert testimony simply went too far. Unlike *Nesbitt,* there was nothing unusual about the vehicle stop that the police conducted. Detective Swan's testimony simply and impermissibly reached an ultimate issue that the jury was well-equipped to decide and, thus, encroached on the jury's role as the ultimate fact-finder. That, coupled with the fact that the testimony closely tracked the legalistic construct of "constructive possession" by incorporating the pertinent statutory language, leads to the conclusion that this case presents precisely the type of situation that cannot be countenanced.

In sum, defendant suffered undue prejudice from the evidence in the form of expert testimony opining, in effect, that he constructively possessed the drugs found in the vehicle he was driving. This ultimate-issue testimony usurped the jury's singular role in the determination of defendant's guilt and irredeemably tainted the remaining trial proofs. We therefore conclude that the admission of the constructive-possession testimony, and the confounding effect from the instruction provided to the jury, caused trial error

that was clearly capable of producing an unjust result in defendant's trial.

IV.

The judgment of the Appellate Division, which affirmed defendant's convictions, is reversed and the matter is remanded for a new trial.

Justice ALBIN, concurring.

I concur with the majority that Detective Swan gave impermissible expert testimony when he opined that defendant and his two passengers were in "constructive possession with intent to distribute" the cache of drugs found in the car. I agree with the majority that a drug expert should not "undertake to opine on whether drugs were possessed by a defendant," that Detective Swan's testimony "closely tracked the legalistic construct of 'constructive possession,' " and that Detective Swan "reached an ultimate issue that the jury was well-equipped to decide, and, thus, encroached on the jury's role as the ultimate fact-finder." *See ante* at 293–94, 300 n. 4, 962 *A.*2d at 1095–96, 1099 n. 4.

Those well-articulated reasons for rejecting Detective Swan's expert testimony, however, cannot be squared with this Court's holdings in *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), *State v. Summers,* 176 *N.J.* 306, 823 *A.*2d 15 (2003), and *State v. Nesbitt,* 185 *N.J.* 504, 888 *A.*2d 472 (2006). In each of those cases, this Court upheld convictions even though police experts testified in response to hypothetical questions that the defendants possessed with intent to distribute the drugs in question. I cannot find any sound jurisprudential distinction between a police expert's opinion—whether given hypothetically or directly—that a defendant *constructively* possessed with intent to distribute drugs or that a defendant *simply* possessed with intent to distribute those drugs.

However much experience police officers may have or welltrained they may be in the ways of drug possession and distribution, police officers are not mind readers and should never be

allowed, under the guise of opinion testimony, to tell a jury that a defendant possessed the state of mind necessary for a conviction. Detective Swan, as the majority states, "went too far" because, by opining that defendant constructively possessed the drugs, he in effect was telling the jury that defendant *knowingly* possessed with *intent* to distribute the drugs found in the car. *See ante* at 285, 962 A.2d at 1089. The same overstepping of bounds occurs when the expert, tracking the statutory language, tells the jury that the defendant—absent the word "constructively"—possessed with intent to distribute drugs. In that example, too, the police expert conveys to the jury his opinion that the defendant *knowingly* possessed the drugs, and therefore intrudes on the jury's exclusive role as finder of fact. I therefore stand by my dissents in *Summers* and *Nesbitt* in which the majority permitted virtually the same type of expert testimony that it condemns today. *See Nesbitt, supra,* 185 *N.J.* at 519, 888 *A.*2d 472 (finding that court did not commit plain error by allowing police detective to opine that defendant was accomplice to crime of possession with intent to distribute controlled dangerous substance); *Summers, supra,* 176 *N.J.* at 316, 823 *A.*2d 15 (finding that court did not commit plain error by allowing police detective to opine that defendant possessed drugs with intent to distribute).

I am sensitive to the needs of law enforcement to explain, through expert testimony, the arcane language, culture, and methods surrounding the crimes of drug possession and distribution for the purpose of enlightening the jury on a subject on which it will have little or no knowledge. As I stated in my dissent in *Nesbitt,*

> [a]n average juror will not know the meaning of code language used by drug distributors or the importance to be attached to the packaging, quantity, and quality of drugs. An expert could edify jurors concerning the customary use of scales and other drug paraphernalia by drug traffickers, as well as the methods used by drug dealers to ply their trade. In those instances, the specialized knowledge and training of the expert is of assistance to the jury in understanding the evidence before it.
>
> [*Nesbitt, supra,* 185 *N.J.* at 521, 888 *A.*2d 472 (Albin, J., dissenting) (citing *Summers, supra,* 176 *N.J.* at 322–23, 823 *A.*2d 15 (Albin, J., dissenting)).]

When there is expert testimony "explain[ing] the significance of the methods and means of drug dealing—matters outside common

knowledge—jurors are well equipped to answer questions such as whether the defendant possessed drugs with intent to distribute, or whether the defendant was an accomplice in a drug transaction, without further expert guidance." *Ibid.* As the majority has observed, a jury does not need expert testimony to explain the obvious.

There is little difference if police officers, tracking the statutory language, give an opinion that a defendant possessed with intent to distribute drugs or if they give an opinion that defendant is guilty of the offense. In both cases, police officers invade the jury's exclusive domain by presuming to know the defendant's state of mind—answering the ultimate factual issue in dispute. Constructive possession is just one manner of possessing an object. The distinction the majority creates between constructive and simple possession with intent to distribute may be sufficient to decide this case—but provides no satisfying or coherent approach to the proper bounds of expert testimony.

Although I am heartened by the majority's opinion today, because I believe it is a step in the right direction, the majority's dutiful but mistaken adherence to the decisions in *Odom, Summers,* and *Nesbitt,* denies the present case a solid jurisprudential foundation or a consistent rationale that can be applied to future cases.

Justice LONG joins in this opinion.

Justice RIVERA–SOTO, dissenting.

In this case, the prosecution properly elicited the opinion of a police detective qualified as an expert concerning a matter outside the ken of an ordinary person: the idiosyncrasies of a clandestine drug transaction. *See ante* at 289–93, 962 A.2d at 1093–95. As the Appellate Division succinctly observed, that opinion was elicited based on the following hypothetical facts:

> three persons in a borrowed car, traveling from New York on Route 95 at night are stopped for a motor vehicle infraction and give false names; the smell of burnt marijuana emanates from the car, on the front passenger floor there are loose folds

of heroin, six bags of marijuana and fifteen bricks of heroin found under the front seat; and over $900 in cash is found on the three individuals.

The panel noted that, based on those facts,

[t]he detective opined that all three individuals would be in constructive possession of the drugs with the intent to distribute them because there was a large amount of drugs even for three persons, that all three were likely involved in the distribution enterprise, with one possibly acting as the "lookout," the other as the "money man" and the third as "security;" that the use of false names showed an intent to avoid apprehension and the use of a borrowed car was typical for drug dealers to avoid seizure of their own vehicle; and the fact that at least one person was smoking marijuana and that the bags of marijuana were found near the heroin showed that those in the car knew the heroin was there.

Tellingly, defendant did not interpose a contemporaneous objection to that expert testimony, thereby denying the trial court the opportunity to correct that to which defendant now tardily objects.[1] *See, e.g., State v. Ingram*, 196 *N.J.* 23, 42, 951 *A.*2d 1000 (2008) (defendant's failure to contemporaneously object to summation "render[s] it fair to infer from the failure to object below that in the context of the trial the error was actually of no moment" (quoting *State v. Nelson*, 173 *N.J.* 417, 471, 803 *A.*2d 1 (2002) (internal quotation marks omitted))); *State v. Nero*, 195 *N.J.* 397, 407, 949 *A.*2d 832 (2008) (defendant's failure to object contemporaneously to jury charge requires application of plain error standard (citing *R.* 2:10–2; *State v. Bunch*, 180 *N.J.* 534, 541, 853 *A.*2d 238 (2004))).

In fact, defendant did not raise the issue of the scope of the expert's testimony until the charge conference when, as the Appellate Division noted, he "requested a jury instruction that the expert's opinion on constructive possession should be disregarded and that such issue is a jury determination." The panel's summary of the resolution of defendant's request, standing alone, disposes of the question on appeal in its entirety:

---

[1] Significantly, a co-defendant, Mark Whitley, did object to the scope of the expert's testimony, both during direct examination and during re-direct examination; in addition, co-defendant Whitley addressed the scope of the expert's opinion during the cross-examination of the expert. In contrast, defendant did not interpose his own objection, did not join in his co-defendant's objections, and did not address the question in his cross-examination of the expert witness.

*With the approval of all counsel,* the judge instructed that it was for the jury to decide first, whether all the facts assumed in the hypothetical question had been proven, and if the jury found that some facts were not proven, then that could impact on the value and weight of the expert's testimony and opinion; next, that the testimony of Detective Swan was admitted solely on the issue of whether the drugs were possessed for personal use or for distribution; and also, that the issue of possession and constructive possession was for the jury to decide based upon the evidence adduced at trial.

[(Emphasis supplied).] [2]

Moreover, defendant never raised the question of the scope of the expert's testimony in either his motion for judgment of acquittal, pursuant to *R.* 3:18–2, or his motion for a new trial, pursuant to *R.* 3:20–1.

Although defendant never objected to the expert testimony as given; although defendant consented to the jury instruction provided by the court on the issue; and although defendant never questioned the propriety of either of those two events in his post-trial motions, the majority nevertheless concludes that, "[b]ecause the expert should not have been permitted to opine on the ultimate issue of whether defendant possessed the drugs found, plain error occurred[,]" *ante* at 284–85, 962 A.2d at 1089–90, and thus reverses defendant's convictions and remands the cause for a new trial. I cannot join in that logic or conclusion.

Because defendant did not contemporaneously object to the now-challenged expert testimony, because defendant consented to the jury instruction given on the subject—which evidenced defendant's consent that whatever ill that testimony suffered from, it

---

[2] To the extent the majority describes that jury charge as a "confounding instruction [that] only exacerbated the original error[,]" *ante* at 297, 962 A.2d at 1098, any such error would have been invited and, hence, not a ground for reversal. *See State v. Lykes,* 192 *N.J.* 519, 539 n. 7, 933 A.2d 1274 (2007) (" 'a defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial. Thus, when a defendant asks the court to take his proffered approach and the court does so, we have held that relief will not be forthcoming on a claim of error by that defendant.' " (quoting *State v. Jenkins,* 178 *N.J.* 347, 358, 840 A.2d 242 (2004))).

had been cured by the court's instruction to the jury—and because defendant failed to raise the question in his post-trial motions, the better reasoning was expressed by the Appellate Division, and I adopt it here in full:

> The hypothetical question posed to Detective Swan was framed and responded to in accordance with the *State v. Summers,* 176 *N.J.* 306, 823 *A.*2d 15 (2003), and *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), guidelines. The judge gave the appropriate standard jury instruction about independently assessing both the facts contained in the hypothetical and the expert's opinion. Moreover, any potential prejudice caused by the detective's use of the term "constructive possession," which was not objected to by any counsel during his testimony, was dispelled by [the trial court]'s instruction, which was consented to by all counsel, that the jury itself must resolve the question of whether the drugs were constructively possessed. We must presume the jurors followed this specific admonition and convicted defendant based solely upon the evidence presented in this case. *State v. Feaster,* 156 *N.J.* 1, 65, 716 *A.*2d 395 (1998), *cert. denied sub nom. Kenney v. New Jersey,* 532 *U.S.* 932, 121 *S.Ct.* 1380, 149 *L.Ed.*2d 306 (2001); *State v. Manley,* 54 *N.J.* 259, 270, 255 *A.*2d 193 (1969).

When viewed in its totality, I cannot conclude, as the majority does, that "defendant suffered undue prejudice from the evidence in the form of expert testimony opining, in effect, that he constructively possessed the drugs found in the vehicle he was driving" and that "[t]his ultimate-issue testimony usurped the jury's singular role in the determination of defendant's guilt and irredeemably tainted the remaining trial proofs." *Ante* at 300, 962 A.2d at 1099. Therefore, because I would affirm the judgment of the Appellate Division that, in turn, affirmed defendant's convictions, I respectfully dissent.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For affirmance*—Justice RIVERA-SOTO—1.