963 A.2d 380 (2009)
405 N.J. Super. 76
STATE of New Jersey, Plaintiff-Respondent,
v.
Robbie THOMPSON, Defendant-Appellant.
No. A-2980-06T4
Superior Court of New Jersey, Appellate Division.
Submitted December 16, 2008.
Decided February 2, 2009.
*381 Yvonne Smith Segars, Public Defender, for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).
Paula T. Dow, Essex County Prosecutor, for respondent (Maria I. Guerrero, Assistant Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendant was indicted for numerous third-degree drug offenses, including three counts for distributing heroin or possessing heroin with the intent to distribute, in violation of N.J.S.A. 2C:35-7. A jury found defendant guilty of all charges. The trial court sentenced defendant to concurrent five-year terms of imprisonment, with three years of parole ineligibility, for the violations of N.J.S.A. 2C:35-7, and merged defendant's other convictions into those convictions.
Defendant's convictions were based on evidence obtained by Newark Police Department undercover narcotics officers during the early afternoon of November 9, *382 2005. Officer Willie Thomas, who was dressed in plain clothes, observed defendant and another individual, Michael Johnson, engage in a brief conversation on the street and then walk over to a parked silver Lincoln. Defendant opened the door and removed a cigarette box. Defendant took items later identified as heroin out of the cigarette box, handed them to Johnson, and put the box back in the car. In return, Johnson handed defendant currency. The two men then separated. Johnson began walking away from the scene of the apparent drug transaction, and defendant got into the Lincoln from which he had removed the cigarette box.
At this point, Officer Thomas radioed his back-up unit, provided a description of Johnson, and directed the officers in the unit to detain him. A few minutes later, those officers intercepted Johnson. When the officers told Johnson why they had stopped him, he said, "I'm not going to give you any trouble, officers," and handed them four glassine envelopes of heroin. These envelopes were labeled "On Fire" in red. Officer Thomas subsequently identified Johnson as the person he had observed engage in an apparent drug transaction with defendant.
The officers in the back-up unit placed Johnson under arrest and informed Thomas that they had apprehended the person he described to them with heroin in his possession. After receiving this information and being joined by several other officers, Officer Thomas approached defendant, who was seated in his Lincoln, told him what he had observed, and removed him from the car. Thomas saw the cigarette box from which the items defendant sold to Johnson had been taken on the side of the car door. Thomas picked up the box and opened it. This search revealed thirteen glassine envelopes containing heroin labeled "On Fire" in red, identical to the four envelopes of heroin the back-up team had found in Johnson's possession. Thomas also discovered seven zip-lock bags containing crack cocaine in the cigarette box and $50 cash in defendant's pocket. At this point, Thomas arrested defendant.
At trial, defendant testified on his own behalf. Although defendant acknowledged speaking with Johnson on November 9, 2005, he asserted that Johnson asked him if he wanted to buy drugs, and that he had told Johnson he did not. Johnson then walked away from him. Defendant denied opening the door to his car while speaking to Johnson. He also denied possessing any drugs or having a cigarette box in his car. In short, defendant alleged that Officer Thomas' testimony regarding his observations of the drug transaction between defendant and Johnson and his arrest of defendant and seizure of the cigarette box containing the heroin and crack cocaine was a fabrication.
On appeal, defendant's sole argument is that he is entitled to a new trial because the trial court improperly allowed the State to present expert opinion testimony regarding the ultimate issue in the case. The State's expert witness was Detective Robert Liput of the Essex County Sheriff's Department, who has extensive experience investigating the retail distribution of drugs. He testified that the envelopes of heroin and zip-lock bags of crack cocaine contained in the cigarette box from which defendant removed the items sold to Johnson were packaged in the most common form in which those drugs are distributed. Liput also testified that it would be unusual for a person who was a drug user and not involved in illegal drug distribution to loiter in a "high narcotics area" for an extended period of time while in possession of drugs. In addition, he testified that a "stash item" is an object, such as a *383 shoe or a can with a false bottom, where a dealer will place drugs for the purpose of concealing them from law enforcement. He said that it is very common for street-level narcotics dealers to employ such a secret place.
After Liput gave this testimony, the prosecutor asked him the following hypothetical question:
Q. Detective, I want you to assume the following hypothetical. Plain clothes police officer is at a location. He sees an individual that we'll refer to as subject A. Subject A is seen having a brief conversation with another person who we'll refer to as Subject B. Subject A and B is, are then seen walking to a car and subject A is seen opening the car door. Subject A is seen removing a cigarette box from that car. Subject A then removes some items from that cigarette box and gives them to subject B. Subject B in return gives him some money. Subject B then walks away. This plain clothes officer believing that he had just seen a drug transaction contacts his back-up officers. He tells them what has happened. He also gives a description of subject B and the direction subject B is walking in.
Subject B is detained by the back-up officer. After searching him, he's found to have four envelopes of heroin. The back-up unit then contacts the officer and confirms that subject B did indeed have illegal narcotics on his person. Subject A is then arrested by the officer.
The officer then looks in the cigarette box and finds 13 additional envelopes of heroin as well as seven baggies of cocaine.
The packaging of the heroin in the cigarette box matches the packaging of the heroin found on subject B. Subject A is further found to have $50 in his possession.
Based upon this hypothetical, can you render an opinion as to the recovered narcotics?
Defense counsel did not object to this question. Liput gave the following response:
That opinion would be that it's my expert opinion that subject A possessed the drugs, the heroin and the crack cocaine in that cigarette box for distribution, and he in fact did sell the four envelopes of heroin to subject B. And the $50 recovered was proceeds from a narcotics transaction.
Defense counsel did not object to this answer. However, after the prosecutor completed her direct examination of Liput, defense counsel moved for a mistrial based on Liput's answer to the prosecutor's hypothetical question on the ground it constituted "an opinion on the ultimate fact the jury has to decide." Defense counsel also contended that the prosecutor's hypothetical question "assumed the fact question that will be before the jury, that Mr. Thompson sold drugs." The trial court denied the motion for a mistrial.
"Admission of expert testimony on drug possession and distribution techniques is permissible when reasonably required to assist jurors in understanding subjects that are beyond the ken of the average layperson." State v. Nesbitt, 185 N.J. 504, 507, 888 A.2d 472 (2006). Moreover, "the State [is permitted] to ask a narcotics expert a hypothetical question mirroring the facts of the case, even though the hypothetical may be `expressed in terms of ultimate issues of fact.'" Ibid. (quoting State v. Odom, 116 N.J. 65, 81, 560 A.2d 1198 (1989)). However, "the phrasing of [such] a hypothetical [question] should not track too precisely the exact language of the criminal statute with which a defendant has been charged." Id. at 517, 888 A.2d 472. "Expert testimony that *384 recites the legal conclusion sought in a verdict is not helpful to the jury." Ibid.
Even if the State elicits improper expert testimony during a criminal trial, a reversal of the defendant's conviction is required only if that testimony was sufficiently prejudicial to have the capacity to bring about an unjust result. Id. at 518-19, 888 A.2d 472; State v. Summers, 176 N.J. 306, 311-18, 823 A.2d 15 (2003). In making this determination, an appellate court must consider the other evidence of defendant's guilt, apart from the expert's improper testimony, and the role that testimony played in the overall trial of the case. Summers, supra, 176 N.J. at 316-17, 823 A.2d 15.
We have no doubt concerning the appropriateness of the State presenting expert opinion testimony as to the packaging of drugs for retail distribution, drug dealers' use of stash items, and the unlikelihood that a person who possessed drugs for personal use rather than distribution would loiter in an area that is known to be used for the sale of drugs. These expert opinions were all probative of the question whether the drugs found in the cigarette box taken from defendant's car were possessed for distribution rather than defendant's own personal use and thus supported Officer Thomas' testimony that defendant had sold the heroin Thomas' back-up team found in Johnson's possession. See State v. Reeds, 197 N.J. 280, 962 A.2d 1087, 2009 WL 137125 at *7-*8 (2009).
However, the prosecutor's hypothetical question, which simply summarized the State's evidence and then asked Liput whether he could "render an opinion as to the recovered narcotics," to which Liput responded, "it's my expert opinion that subject A [i.e., defendant] possessed the drugs, the heroin and the crack cocaine in that cigarette box[,] for distribution, and he in fact did sell the four envelopes of heroin to subject B [i.e., Johnson]," did not elicit proper expert testimony. Liput's response to the prosecutor's hypothetical question not only "track[ed] the language of the criminal statute with which [defendant had] been charged[,]" Nesbitt, supra, 185 N.J. at 517, 888 A.2d 472, but also impermissibly expressed "his opinion[] that [a] drug transaction[] had, in fact, occurred[,]" State v. Baskerville, 324 N.J.Super. 245, 257, 735 A.2d 39 (App.Div. 1999), certif. denied, 163 N.J. 10, 746 A.2d 456 (2000); see also Reeds, supra, 197 N.J. at ___, 962 A.2d 1087, 2009 WL 137125 at *8-*9. Consequently, if defense counsel had objected to the prosecutor's hypothetical question, the objection should have been sustained. Likewise, if defense counsel had objected to Liput's answer, that answer should have been stricken. But defense counsel did not make timely objections to the hypothetical question or the answer. Instead, she waited until the prosecutor completed her direct examination of Liput and then requested a mistrial, which the trial court denied.
A trial court "should grant a mistrial only to prevent an obvious failure of justice." State v. Harvey, 151 N.J. 117, 205, 699 A.2d 596 (1997). "[A]n appellate court will not disturb a trial court's ruling on a motion for a mistrial absent an abuse of discretion that results in a manifest injustice." Ibid.
We are satisfied that there was no "manifest injustice" as a result of the trial court's denial of defendant's motion for a mistrial. The evidence of defendant's guilt was overwhelming. Officer Thomas observed defendant engage in an apparent sale of drugs to Johnson. A few minutes later, Thomas' back-up team intercepted Johnson, who handed the officers four glassine envelopes of heroin. Thomas *385 then apprehended defendant in his car and seized the cigarette box from which defendant had removed the items sold to Johnson. Thomas' examination of the cigarette box revealed thirteen envelopes containing heroin that had the same red "On Fire" label as the four envelopes found in Johnson's possession.
The defense was not that there was some innocent explanation for Officer Thomas' observations of defendant's apparent sale of drugs to Johnson and the drugs found in the cigarette box located in defendant's car. Instead, the defense, presented through defendant's own testimony, was that Thomas' testimony was fabricated.
Thus, the question in the case was ultimately one of credibility: did Thomas or defendant testify truthfully? Liput was not asked to express an opinion regarding this question. Rather, the prosecutor asked him a hypothetical question that incorporated Officer Thomas' version of the facts. The question was improper because it was well within the competence of the jury to answer without the aid of expert opinion evidence.
However, the question was not prejudicial because the answer was obvious; if the jury credited Thomas' testimony, defendant was guilty of possessing for distribution and distributing the drugs contained in the cigarette box found in his car. Significantly, although the prosecutor alluded in her summation to Liput's testimony concerning the packaging of the drugs found in the cigarette box, a drug dealer's use of a stash item, and the unlikelihood of a person who possessed drugs solely for his own use remaining in an area of high drug trafficking, she did not even mention Liput's answer to the hypothetical question incorporating Thomas' testimony.
In support of his argument on this appeal, defendant relies primarily upon our opinions in Baskerville, supra, 324 N.J.Super. 245, 735 A.2d 39, and State v. Boston, 380 N.J.Super. 487, 882 A.2d 987 (App.Div. 2005). In Baskerville, police officers, using binoculars, observed defendant from a distance of 150 to 170 feet engaging in what the officers believed were drug transactions with two individuals. The officers' testimony regarding those observations was vague and uncertain. See 324 N.J.Super. at 248-54, 735 A.2d 39. The officers stopped one of the persons with whom defendant had engaged in an apparent drug transaction. Id. at 244, 735 A.2d 39. That person dropped what appeared to be nine vials of cocaine. Ibid. The police arrested defendant shortly thereafter, ibid., but did not find any drugs in his possession, id. at 254, 735 A.2d 39. However, the State presented expert opinion evidence that the two transactions observed by the police had been sales of drugs by defendant. Id. at 254-56, 735 A.2d 39. We reversed defendant's convictions on the ground that the expert's "opinion that drug transactions had, in fact, occurred ... added elements to the State's proofs which rendered the trial unfair." Id. at 257, 735 A.2d 39. In reaching this conclusion, we stated:
The State, manifestly, was not entitled to ... an enhanced proof opportunity, through an expert opinion on the ultimate question, to salvage a potentially in-sufficient case. ... In the State's attempt to fill the unmistakable gaps in [the fact witnesses'] testimony, and to strengthen the obvious weaknesses of its case, the prosecution could not validly suggest, through its expert witness, stronger inferences regarding the ultimate question than the fact testimony itself would support. In doing so, the State added an irredeemable element of undue prejudice to the trial.
[Id. at 263, 735 A.2d 39.]
*386 Boston was a case the court considered to be "factually identical" to Baskerville. Boston, supra, 380 N.J.Super. at 492, 882 A.2d 987. Police officers conducting an undercover surveillance observed a woman approach defendant on the street and speak to her. Id. at 489, 882 A.2d 987. Defendant then spoke to a codefendant, Frazier, who walked inside a house and returned with an item he gave to defendant. Ibid. Defendant, in turn, gave the item to the woman and received money in return. Ibid. After these observations, the police undertook to arrest both defendant and Frazier. Ibid. When the police apprehended defendant, they found no drugs or other evidence of involvement in selling drugs on her, with the possible exception of $92 in cash. Id. at 491, 882 A.2d 987. When the police attempted to apprehend Frazier, he threw down four envelopes of heroin and fled into the house. The police caught Frazier on the third floor of the house, where they seized additional heroin. Id. at 489, 882 A.2d 987. At trial, the State presented testimony by an expert in narcotics investigations, who expressed an opinion in response to a hypothetical question that incorporated the testimony of the police officers who had conducted the surveillance of defendant, that defendant had sold drugs to the woman who approached her on the street. Id. at 491-92, 882 A.2d 987.
In reversing defendant's conviction based on this expert opinion testimony, we stated:
Here, as in Baskerville, a police witness testified to his observations of activities that could be construed as one or more illicit drug transactions. Here, as there, no drugs were found on defendant or in any area within her reach. ... We held in Baskerville that expert witness testimony opining that "the individual was selling narcotics," id. at 255, 735 A.2d 39, and the like, was impermissible "to fill in the gaps which the direct evidence presented" between the acts recounted and the "ultimate question" of defendant's guilt for a drug crime.
[Id. at 493, 882 A.2d 987.]
The court also distinguished Summers, supra, 176 N.J. 306, 823 A.2d 15, in which the Supreme Court affirmed a conviction for distribution of drugs even though the State's proofs included expert opinion testimony similar to the testimony presented in Baskerville and Boston:
[I]n Summers, the facts established by the police witnesses and unrebutted by the defendant included that the police had found on his person a supply of drugs. ...
Here, a real issue of fact existed about this defendant's connection to the drugs that had been found at some distance after the police had pursued the co-defendant. The State could not properly seek a favorable resolution of the fact issues committed to the jury for resolution by bolstering the testimony of its only fact witness with the opinion of an expert on the ultimate issue.
[Boston, supra, 380 N.J.Super. at 493-94, 882 A.2d 987.]
As in Baskerville and Boston, the Supreme Court's recent decision in Reeds, supra, 197 N.J. 280, 962 A.2d 1087, 2009 WL 137125, involved a case in which the State used improper expert testimony to establish the defendant's possession of drugs in the absence of any direct evidence of such possession. The defendant in Reeds was the driver of a car that was stopped for motor vehicle violations. 197 N.J. at ___, 962 A.2d 1087, 2009 WL 137125 at *1. There were also two passengers in the car. Ibid. The stop revealed evidence that justified a search of the passenger compartment. Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *1-*2. This *387 search resulted in the discovery of a substantial amount of heroin under the front passenger seat and on the floor where the passenger had been sitting. Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *2. No drugs were found on the defendant's person or on the floor under him. The State's proofs included testimony by an expert in narcotics distribution and possession. Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *2. This expert expressed the opinion that the drugs found in the car were "possessed with intent to distribute." Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *3. The Court suggested that this was proper expert testimony. Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *7-*8.
However, the expert also expressed an opinion, in response to a hypothetical question incorporating the State's evidence, that the drugs were "constructively possessed" by all three occupants of the car. Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *2-*4. The Court concluded that this part of the expert testimony was improper because it was "tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession claims for which defendant was charged." Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *9. The Court further concluded that this improper expert testimony was sufficiently prejudicial to require a reversal of defendant's conviction because it "opin[ed], in effect, that [defendant] constructively possessed the drugs found in the vehicle he was driving[,] ... [which] usurped the jury's singular role in the determination of defendant's guilt and irredeemably tainted the remaining trial proofs." Id. at ___, 962 A.2d 1087, 2009 WL 137125 at *11.
In contrast to Reeds, the State in this case did not have to show that defendant had constructive possession of drugs that were not in his immediate possession to prove the charges against him. Instead, as in Summers and unlike in Reeds, Baskerville and Boston, the police discovered drugs in defendant's possession when they apprehended him. Thus, the State's evidence showed that defendant's possession of drugs was actual rather than merely constructive. Moreover, the heroin found in his possession had the same label as the heroin found in Johnson's possession. Consequently, unlike the expert opinion testimony that required reversal in Reeds, Baskerville and Boston, Liput's testimony was not utilized by the State "to fill the unmistakable gaps in [the] testimony [of the surveilling officers] and to strengthen the obvious weaknesses of its case [by] suggest[ing], through its expert witness, stronger inferences regarding the ultimate question than the fact testimony itself would support." Baskerville, supra, 324 N.J.Super. at 263, 735 A.2d 39; Boston, supra, 380 N.J.Super. at 494, 882 A.2d 987. Instead, as in Summers, "the State produced substantial evidence of defendant's guilt, apart from [Liput's] testimony, including the drugs found [in the cigarette box located in defendant's car] ... and the eyewitness testimony of the surveillance and back-up officers." 176 N.J. at 316, 823 A.2d 15. Therefore, Liput's response to the prosecutor's hypothetical question does not require a reversal of defendant's conviction.
Affirmed.