**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5065-13T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLTON L. CLARK,

    Defendant-Appellant.

_____

Argued May 11, 2016 — Decided June 26, 2017

Before Judges Fuentes, Koblitz and Kennedy.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 13-
05-1059.

Tamar Yael Lerer, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Ms. Lerer of counsel and on the brief).

Frank J. Ducoat, Special Deputy Attorney
General/Acting Assistant Prosecutor argued
the cause for the respondent (Carolyn A.
Murray, Acting Essex County Prosecutor,
attorney; Mr. Ducoat of counsel and on the
brief).

PER CURIAM

Following a jury trial, defendant was found guilty of official misconduct, N.J.S.A. 2C:30-2(a) (count one), and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two). He was thereafter sentenced to five years incarceration, subject to a five-year period of parole ineligibility, pursuant to N.J.S.A. 2C:43-6.5 on count one, and to five years with an eighty-five percent period of parole ineligibility and three years of post-release supervision, pursuant to N.J.S.A. 2C:43-7.2 on count two. The sentences were to run concurrent. He now appeals his conviction and argues as follows:

> POINT I
>
> THE FATALLY FLAWED JURY INSTRUCTIONS IN THIS CASE DEPRIVED THE DEFENDANT OF DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL AND NECESSITATE REVERSAL OF HIS CONVICTIONS. (NOT RAISED BELOW)
>
> A.  The Trial Court's Instruction On The Use of Force, Which Was Legally Incorrect In Regard To Both Charges And Eliminated The State's Burden To Prove The Defendant's Guilt On Each Element Of Each Charge, Necessitates The Reversal Of The Defendant's Convictions.
>
>    i.  Introduction
>
>    ii.  The Trial Court Misinstructed The Jury, Misstating The Law And Alleviating The State Of Its Burden Of Proof.

B. The Trial Court's Failure To Instruct The Jury On Self-Defense Necessitates Reversal Of The Defendant's Convictions.

POINT II

THE TRIAL COURT'S ERRONEOUS RULING PROHIBITING PROFFERED TESTIMONY BY THE DEFENDANT'S EXPERT NECESSITATES THE REVERSAL OF THE DEFENDANT'S CONVICTIONS.

POINT III

THE TRIAL COURT'S INAPPROPRIATE DENIAL OF THE DEFENDANT'S KNOWING AND VOLUNTARY WAIVER OF HIS RIGHT TO A JURY TRIAL NECESSITATES THE REVERSAL OF HIS CONVICTIONS.

POINT IV

DEFENDANT'S CONVICTIONS FOR AGGRAVATED ASSAULT AND OFFICIAL MISCONDUCT SHOULD MERGE.

POINT V

THE DEFENDANT IS ENTITLED TO THREE ADDITIONAL DAYS OF JAIL CREDIT.

We have considered these arguments in light of the record and the law, and we affirm. We do, however, remand to correct the judgment of conviction, as we explain hereinafter.

I.

We begin with a brief recitation of the facts established at trial.

On August 26, 2011, after being reprimanded by defendant, a corrections officer at the Essex County Correctional Facility, for

cursing in the medical unit, the victim, an inmate, was instructed by defendant to return to her housing pod for "lock in." Defendant advised the victim she would be returned to her pod and her medication would be brought to her. During the walk back to her pod, the victim and defendant exchanged obscenities and vulgarities, until finally defendant grabbed the victim from behind by her shoulder outside of the victim's housing unit.

The victim testified that when defendant grabbed her arm, she swung it to get him off; however, she did not intend to hit defendant. Then, defendant began punching the victim repeatedly in the face with a closed fist. At that point, she attempted to defend herself by delivering counter-punches, before then trying to move away. Initially, she remained standing until she was hit "with great force," causing her to fall and eventually "black[] out." Despite other officers trying to restrain defendant, he continued to strike the victim while she was on the ground. Defendant also dragged the victim by her hair into the "sally port."

The victim testified that the next thing she remembered she was being picked up and pressed against the wall by another officer. She was then handcuffed and taken back to the medical unit. As a result of the altercation, the victim suffered a

4

fractured eye, a "busted" lip, a chipped tooth, and some of her hair had been pulled out. Later, upon explaining the incident to another officer, the victim was transported to East Orange General Hospital, where she stayed for one week. Photos of the victim's injuries were entered into evidence, and a videotape depicting the incident was also played for the jury.

Defendant testified that when the inmate resisted lock in, he attempted to place her in an "escort hold," which involves "grab[bing] either the left or right shoulder and then [...] grab[bing] [the] accompany[ing] arm [...] — it could be a wrist, it could be a forearm, elbow." Defendant testified that the victim resisted when he turned her towards the door, and based on his training, he believed a punch from the inmate was imminent. Defendant testified that he anticipated being hit with a fist, and he explained that he blocked a strike, before moving forward to restrain the inmate. Defendant testified that he blocked two other attempts to punch him and concluded he needed to employ physical force to avoid injury. He added that he continued striking the inmate after he wrestled her to the ground because she continued to resist.

Officer Allen, a corrections officer working in the female pod at the time of the incident, essentially corroborated the

testimony of the inmate, and explained that after the inmate tried to pull away from the defendant, "[defendant] started to swing." Officer Allen further corroborated the victim's testimony by explaining that the victim tried to get away from defendant's punches before eventually falling to the ground. There, defendant continued hitting the victim despite her attempts to cover her face.

Another corrections officer in the female pod, Officer Hernandez, testified that prior to the physical altercation, defendant was demanding that Officers Hernandez and Allen lock the victim in, which was contrary to normal protocol. Officer Allen and Officer Hernandez also testified that during the incident, they both attempted to intervene. However, defendant pushed them away and continued punching the victim.

Prior to trial, Judge Peter V. Ryan denied defendant's motion for a bench trial, and ruled that defendant's proposed expert, Dr. Richard Celeste, could not testify about the reasonableness of the force used by defendant in the incident. However, Judge Ryan ordered that following a N.J.R.E. 104 hearing, defendant's expert could potentially testify about the training and education defendant received regarding the use of force.

We first consider defendant's two arguments regarding the jury instructions, including the trial judge's alleged improper instructions on the use of force and his decision not to provide a sua sponte charge for self-defense. Next, we consider the ruling denying defendant's application to call an expert witness on the reasonableness of defendant's force. We then briefly address defendant's argument that the trial judge improperly denied his waiver of a jury trial. Finally, we address defendant's remaining two points, including his argument that the convictions for official misconduct and assault should merge and that he is entitled to three additional days of jail credit.

A. Use of Force Jury Instruction

Defendant argues for the first time on appeal that the trial judge's jury instructions on the use of force deprived him of a fair trial. Specifically, defendant contends that the trial judge gave improper instructions that reduced the State's burden of proof. The relevant portion of the jury instruction is reproduced below:

> The State contends the defendant Carlton Clark's use of force was not for a legitimate purpose, and defendant's use of force was not in accordance with the Attorney General Guidelines and the Essex County Department of Corrections Policy regarding the use of force.

A-5065-13T1

If you find the State has failed to prove beyond a reasonable doubt the force was not in accordance with the Attorney General Guidelines and the Essex County Department of Corrections Policy regarding the use of force, you must find the defendant Officer Carlton Clark not guilty.

If, however, you find the State has proven beyond a reasonable doubt the use of force by defendant Carlton Clark was not in accordance with the Attorney General Guidelines and the Essex County Department of Corrections Policy regarding the use of force, you must find the defendant Carlton Clark guilty.

Defendant contends that this instruction directed the jury to convict defendant of both counts if the State established that the use of force was unauthorized. Defendant avers that the later instruction on the elements of each offense does not mitigate the error, and concludes that this error warrants reversal.

Defendant concedes that no objection was made to the jury instruction, and therefore we review this argument under the plain error standard, reversing only if such an error was clearly capable of producing an unjust result. R. 2:10-2. The Supreme Court has said that

[i]n the context of a jury charge, plain error requires demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed

> a clear capacity to bring about an unjust
> result."
>
> [State v. Burns, 192 N.J. 312, 341 (2007)
> (second alteration in original) (quoting State
> v. Jordan, 147 N.J. 409, 422 (1997)).]

In addition, we examine the argument here in light of "the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006). "In a case where, as here, the State argues that the error is harmless because the trial judge correctly instructed the jury in other components of the charge, '[t]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law.'" State v. McKinney, 223 N.J. 475, 496 (2015) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997), certif. denied, 153 N.J. 49 (1998)). "[T]he key to finding harmless error in such cases is the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions." Ibid. (quoting Jackmon, supra, 305 N.J. Super. at 299).

While an erroneous jury charge may be a "'poor candidate[] for rehabilitation' under the plain error theory," Jordan, supra, 147 N.J. at 422 (quoting State v. Simon, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case." Chapland, supra, 187 N.J.

at 289. In addition, the failure to object signifies that "in the context of the trial[,] the [alleged] error was actually of no moment." State v. Ingram, 196 N.J. 23, 42 (2008) (quoting State v. Nelson, 173 N.J. 417, 471 (2002)).

Here, following the use of force instruction, the trial judge provided the proper instructions on the elements necessary for a charge of official misconduct:

> In order to be convicted under [N.J.S.A. 2C:30-2(a)], (1) the defendant had to be a "public servant" at all relevant times, (2) who committed "an act relating to his office" which constituted "an unauthorized exercise of his official functions," knowing that it was unauthorized or committed in an unauthorized manner, and (3) his purpose must have been "to obtain a benefit for himself or another" or "to injure or deprive another of a benefit."
>
> [State v. Quezada, 402 N.J. Super. 277, 283 (App. Div. 2008); see N.J.S.A. 2C:30-2(a).]

The trial judge also went on to properly provide the elements necessary for a conviction of aggravated assault. See N.J.S.A. 2C:12-1(b)(1). In giving these instructions, the trial judge properly emphasized that it was the State's burden to prove each element of each offense "beyond a reasonable doubt."

In his initial instructions, the trial judge informed the jury that it must find defendant not guilty if the State failed to overcome its burden of proof. The jury charge consistently

referenced that the burden of proof remained with the State on each charge, and accurately described the burden to establish each element of the offenses charged beyond reasonable doubt. Moreover, the judge was specific in instructing the jury that the offenses charged were separate and that defendant was entitled to have each count considered separately.

Accordingly, we are satisfied that there was no error in the instructions given by the judge and, further, that substantial evidence supported the jury's verdict. The parties stipulated that defendant was a corrections officer, and the serious injuries of the victim were established with the stipulation of her broken orbital bone. The jury viewed the videotape of the incident multiple times, and had the ability to weigh the credibility of the inmate and the defendant, and to assess the testimony of defendant's fellow corrections officers who observed the incident firsthand. Officer Allen, for example, testified that cursing at an officer is considered a minor violation that does not warrant physical force. Officer Hernandez provided similar testimony. Both officers also recalled observing defendant striking the victim in the head repeatedly.

Based upon the forgoing, we find no reversible error in the trial judge's jury instructions.

A-5065-13T1

B. Self-Defense Jury Instruction

Defendant argues, for the first time on appeal, that the trial judge was required to sua sponte provide the jury with a self-defense instruction. Defendant contends that the theory of using force in self-defense was central to his case. Specifically, defendant argues that there was ample evidence in the record to support a self-defense instruction, and that providing such an instruction would have presented a complete defense to both charges. Such a failure, he argues, constitutes reversible error.

Again, because defendant did not request a self-defense charge, our review is based upon the plain error standard. State v. O'Carroll, 385 N.J. Super. 211, 235 (App. Div.), certif. denied, 188 N.J. 489 (2006).

"A trial judge must sua sponte charge self-defense in the absence of a request . . . 'if there exists evidence in either the State's or the defendant's case sufficient to provide a rational basis for its applicability.'" State v. Galicia, 210 N.J. 364, 390 (2012) (quoting O'Carroll, supra, 385 N.J. Super. at 236 (internal quotations omitted)). The required "inquiry is whether the evidence presented to the trial court clearly indicates a foundation for the justification of self-defense." Id. at 391. "[I]f any evidence raising the issue of self-defense is admitted

in either the State's or the defendant's case, then the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts." State v. Burks, 208 N.J. Super. 595, 604 (App. Div. 1986).

Pursuant to statute, "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4(a). However, a person "who provokes or initiates an assault cannot escape criminal liability by invoking self-defense as a defense to a prosecution arising from the injury done to another." State v. Rivers, 252 N.J. Super. 142, 149 (App. Div. 1991). The justification of "self-defense is . . . unavailable if a lesser degree of force could have been used to respond to an attack." Galicia, supra, 210 N.J. at 390.

Here, the testimony at trial, along with the video of the altercation presented to the jury, supports the conclusion that defendant was the initial aggressor. Following their exchange of words, defendant aggressively grabbed the victim from behind, endeavoring to put her in lockup. The victim then swung her arm

in an attempt to free herself, and defendant began repeatedly striking her in the head with a closed fist. As such, if the jury determined that defendant was the initial aggressor, no self-defense charge was necessary. See Rivers, supra, 252 N.J. Super. at 149. Further, the video shows defendant throwing several punches to the victim while she was defenseless on the ground. These facts clearly demonstrate that the level of force used was excessive, as further corroborated by the testimony of Officer Allen and Officer Hernandez. Galicia, supra, 210 N.J. at 390.

## III.

The issue here is not whether the trial judge precluded defendant's expert testimony, as defendant argues, but whether the trial judge properly limited the scope of the proposed expert's testimony. The trial judge never prohibited the defense from calling any expert witness, but rather held that neither party could call an expert witness to testify that the force defendant actually used was reasonable or unreasonable.

Prior to trial, Judge Ryan, upon motion from the State, considered whether the defense could call the Director of the Somerset County Police Academy, Dr. Richard Celeste, as an expert witness concerning "police practice and procedure." According to defense counsel, Dr. Celeste would testify that, "under the facts

14                                                                    A-5065-13T1

and circumstances, based upon his training and experience and the experience that [defendant] has received[,] that the actions undertaken, in his opinion as an expert, are justified under the facts and circumstances of this particular instance."  Following a hearing, Judge Ryan determined that Dr. Celeste could not testify to any facts or opinions concerning the instant matter, including, but not limited to that "defendant acted in conformance with, or deviated from, the use of force guidelines, rules, regulations, law, etc."  However, Judge Ryan also ordered that, subject to a N.J.R.E. 104 hearing, Dr. Celeste may be permitted to testify "concerning the training and education of [defendant]."

Judge Robert Gardner conducted the N.J.R.E. 104 hearing, wherein he found that Dr. Celeste's proffered testimony was within the parameters of Judge Ryan's prior order.  At trial, the State again moved to preclude Dr. Celeste from testifying based upon "issues regarding discovery and also information concerning 104 hearing[.]"  Judge Gardner denied the State's request, ruling consistently with the court's prior determinations.  Following completion of the State's case however, the defense called several witnesses, but not Dr. Celeste.

A trial court's decision permitting or precluding expert testimony is entitled to deference on appeal. Townsend v. Pierre,

221 N.J. 36, 52 (2015); see also State v. Berry, 140 N.J. 280, 293 (1995) ("[T]he necessity for and admissibility of expert testimony are matters to be determined within the sound exercise of discretion by the trial court.").

Expert testimony is admissible where the subject matter at issue may not be sufficiently familiar to the average juror or where it would "assist the [jurors] to understand the evidence or to determine a fact in issue[.]" Berry, supra, 140 N.J. at 289 (quoting N.J.R.E. 702). The requirement that expert testimony "assist the [jurors]" has been interpreted broadly to encompass testimony helpful to their understanding of the evidence presented. Id. at 290-91. The admissibility of expert testimony does not depend on "'whether the subject matter is common or uncommon or whether many persons or few have knowledge of the matter[.]'" Id. at 291 (quoting Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141-42 (1950)). Expert opinion testimony is permissible even where it embraces the ultimate issue to be determined by the jury, so long as the testimony does not express an "'opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts and evidence in light of [the expert's] specialized knowledge[.]'" State v. Summers, 176 N.J. 306, 314 (2003) (quoting State v. Odom, 116 N.J. 65, 79

(1989)); N.J.R.E. 704. The admissibility of such testimony rests in the sound discretion of the trial court. Summers, supra, 176 N.J. at 312.

Here, the reasonableness of defendant's use of force was the determinative question for the jury. Thus, the trial judge properly found that the parties' experts may testify as to the relevant guidelines regarding the use of force, along with the educational training that defendant received in that area. In fact, Raymond Hoffman, an assistant prosecutor and police legal advisor in Essex County, testified as a fact witness for the State. He described the training and skills defendant learned as a student of his at the Essex County Police Academy; however, the trial court ruled that Hoffman could not testify as an expert witness. The court explained, consistent with Judge Ryan's ruling, that Hoffman could not testify as an expert in the State's case-in-chief, but could possibly do so in rebuttal, depending on whether the defense puts "a witness on at all," and, if so, what he testifies to. Therefore, the record is clear that the trial judge did not "prohibit" defendant from calling its expert witness.

Rather, the parties were instructed that their expert witnesses could not provide an opinion about whether defendant acted in conformance with or deviated from those guidelines or

training.  Such an opinion would go not only to the sole issue in this case, but also to determining the guilt or innocence of defendant.  Therefore, in agreeing with the trial court's determination that any expert testimony regarding the reasonableness of defendant's conduct would usurp the role of the jury, we find no abuse of discretion.  See <u>State v. McLean</u>, 205 <u>N.J.</u> 438, 453 (2011).

### IV.

We next consider defendant's argument that the trial court improperly denied his knowing and voluntary waiver of a jury trial.  Specifically, defendant argues that the trial court failed to articulate the reasons for his denial pursuant to <u>State v. Dunne</u>, 124 <u>N.J.</u> 303 (1991).

In a letter dated, March 14, 2013, defendant sought to waive his right to a jury trial pursuant to <u>Rule</u> 1:8-1.  He signed the document indicating that the waiver was made freely, knowingly and voluntarily.  The State objected to defendant's waiver request.

On May 13, 2013, a hearing was held before Judge Ryan on defendant's motion for a bench trial and defendant's motion regarding certain expert testimony to be utilized at trial.  The motion judge denied defendant's motion for a bench trial, stating,

"I think it [is] something that should be decided by a jury of your peers, not by a guy in black robes."

"[T]rial by jury is fundamental to the American system of criminal justice." Dunne, supra, 124 N.J. at 316. And, while the right to trial by jury may be waived by a defendant, our Supreme Court has recognized that it remains "'normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses.'" Ibid. (quoting Patton v. United States, 281 U.S. 276, 312, 50 S. Ct. 253, 263, 74 L. Ed. 854, 870 (1930)); see also R. 1:8-1(a). Accordingly, the Dunne Court determined that in considering whether to give effect to a defendant's waiver of trial by jury, a judge should:

> (1) determine whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel;
>
> (2) determine whether the waiver is tendered in good faith or as a stratagem to procure an otherwise impermissible advantage; and
>
> (3) determine, with an accompanying statement of reasons, whether, considering all relevant factors, . . . it should grant or deny the defendant's request in the circumstances of the case.
>
> [Id. at 317.]

The Court described the factors referred to in the third element in the following way:

> Although there is no "judicial calculus that unerringly resolves each case," State v. R.G.D., 108 N.J. 1, 12 (1987), the "evidential axis" that we described in R.G.D. provides a useful analogy. At one end of the scale, tilting in favor of jury trial, will be the gravity of the crime. The higher the degree of the crime, the greater the weight given to that factor. Other factors that will tip the scale will be the position of the State, the anticipated duration and complexity of the State's presentation of the evidence, the amenability of the issues to jury resolution, the existence of a highly-charged emotional atmosphere [recognizing this may cut both ways], the presence of particularly-technical matters that are interwoven with fact, and the anticipated need for numerous rulings on the admissibility or inadmissibility of evidence.
>
> [Ibid.]

Because the accused does not possess a "constitutional right to waive a jury trial and insist on a bench trial," id. at 316, the matter rests with the trial judge's sound discretion.

Here, while Judge Ryan did not express in detail the conclusions underlying the third element of Dunne, the Supreme Court recognized that this statement of reasons merely provides "structure to the trial court's discretionary judgment and will soundly guide appellate review." Id. at 317-18 (citing State v. Roth, 95 N.J. 334, 363-64 (1984)). Finding ourselves in the same

position as the trial court, we evaluate the ruling for abuse of discretion based upon the evidence contained in the record.  Id. at 312-13.

In considering the gravity of the charged offenses, as well as the factual nature of this case, which involved a physical altercation between a male corrections officer and a female inmate, we agree that a jury was in a better position to evaluate the merits of this case.  Additionally, this case was not one that involved "particularly technical matters" or the "anticipated need for numerous rulings on the admissibility or inadmissibility of evidence."  Therefore, we find no reversible error in the trial court's decision to deny defendant's waiver request.

V.

In defendant's remaining points, he argues, and the State concedes, that his convictions for official misconduct and assault should merge and that he is entitled to three additional days of jail credit.  We agree and remand for a correction of the judgment of conviction.

As for the merging of defendant's two counts, in State v. Lore, 197 N.J. Super. 277, 283-84 (1984), we concluded that a defendant's convictions for official misconduct and assault should merge when "[t]he two offenses occurred at the same time and place

[and] [t]he State relied upon the simple assault to establish the official misconduct in office." Ibid. "Otherwise, defendant will be punished twice for one offense." Id. at 284.

With respect to defendant's entitlement to three days additional jail credit, defendant was granted forty-eight days of credit for time spent in custody prior to sentencing. R. 3:21-8. However, the judgment of conviction inaccurately states that he was only in custody from February 14, 2014, to the date of sentencing, April 3, 2014. Defendant's bail was revoked and he was taken into custody on February 11, 2014. Therefore, defendant should have received fifty-one days of jail credit.

As modified, the judgment of conviction is accordingly affirmed, and we remand the matter to the Law Division to correct the judgment of conviction.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5065-13T1